Mr. Justice fCATRON
 

 delivered the opinion of the court;
 

 Alfred J. Lowry sued James. Erwin in the District Court for the ninth district of Louisiana, for a tract of land of about six hundred acres, and forty-four slaves, who were employed in cultivating the land by growing cotton thereon. The property was situate in' the parish of Madison, in that State. The suit was commenced in 1841, by petition, which alleges that about July, 1840, one James Erwin, illegally, and by fraud and collusion, and without any legal title thereto, took possession.of;
 
 *179
 
 all the above described property, and is still in possession of the same, has appropriated and wrongfully converted to his own use all the fruits and revenues of said property, and pretends to be the owner thereof, and refuses to deliver to the petitioner the possession. The property was not claimed by Lowry in his own right, but as curator of the estate of Alexander McNeill.
 

 To this petition 'Erwin answered, among other things not within the cognizance of this court, that on the 6th day of July, 1840, he became the pr\ diaser of the property at public auction, at a sale made thereof by the marshal of the llnited States, who sold the same under a judgment, and on a writ of seizure and sale, issued from the Circuit Court of the United States for the Eastern District of Louisiana, in a case wherein Andrew Erwin .was plaintiff, and Hector McNeill, testamentary executor of Alexander McNeill, deceased, was defendant ; and that he paid the sum of sixteen thousand dollars in cash therefor, which was applied to the payment of a debt due by mortgage by the succession of Alexander' McNeill; and he exhibited a copy of' the proceedings on which the sale was founded; and his bill of sale made by the marshal for the land and negroes. These proceedings and the marshal’s deed were given in evidence by the defendant on the trial before the State District Court. A judgment was there given against Erwin, and the property decreed to Lowry as curator; from which Erwin appealed to the Supreme Court of Louisiana, where the • judgment of the District Court was affirmed; and to this judgment Erwin prosecuted a writ of error out .of this court,’'under the twenty-fifth section of the Judiciary Act of 1789, on the .ground that there was drawn in question the validity of án authority exercised under the United States, and that the decision of the Supreme Court of Louisiana was-against its validity. That such was the fact,, and that this court has jurisdiction, is not and cannot be controverted. The judgment ordering the seizure and sale was déclared "void, for several reasons. Such of them as . are subject to our cognizance we will proceed to consider.
 

 The whole proceeding, commencing with the petition of Andrew Erwin demanding a seizure and sale, to James Erwin’s deed from the marshal,, was the exercise of one authority; and the question submitted for our consideration is, whether the marshal’s sale was void on any legal ground; — that is to say, whether the deed by the marshal to James Erwin was void for the reason that it was not supported, by a lawful judgment, or that, for want of a compliance with any legal requirements in conducting the seizure and sale, the deed was void. If void on any one ground, it would be altogether Useless to reverse
 
 *180
 
 the judgment because an error had been committed on some other ground; as, on the cause being remanded, the State court would pronounce the deed void a second time on the true ground. This court was compelled so to hold in Collier
 
 v.
 
 Stanbrough, 6 How. 14.
 

 The deed, in the. casé before us, was held void by the Supreme Court of Louisiana: — First, because Hector McNeill was not a citizen of that State when Andrew Erwin’s petition was filed. This- fact the court ascertained by proof dehors the record. The petition alleges that Andrew Erwin was a citizen of the State of Tennessee, therein residing; and that Hector McNeill was a citizen of the State of Louisiana, residing in the parish of Madison, and within the jurisdiction of the court. On being served witn process, Hector McNeill did not dispute the fact, nor make any defence ; the purchaser found the fact established by the record, nor could it be called in question in a collateral action and disproved, and the purchaser’s title defeated by inferior evidence. On this question the case of McCormick
 
 v.
 
 Sullivan, 10 Wheaton, 192, is entitled to great weight. There neither party was averred to be a citizen of any State ; and the attempt was made by a second suit to treat the purchaser’s title- as'a nullity, because-of this defect in the proceeding on which the purchase was founded; -but it was held that the purchaser took a good title. In the case nefore us, the record on its face was perfect, and evidence was let in to contradict and to- overthrow it, which we deem to be wholly inadmissible in any collateral proceeding. Hector McNeill was estopped to deny the fact; and so is the present party, his'successor.
 

 The next question decided below was, that the property when it was seized and sold was part .of a succession, and, being in the course of administration in the Probate Court, could not be seized and sold by an execution founded bn a proceeding in another court. This question we declined to decide in the case of Collier
 
 v.
 
 Stanbrough, and ruled that cause on another ground. That a special mortgage, where no succession has occurred, may be foreclosed by this mode of proceeding, — that is, by an order of seizure and sale in the Circuit Court of the United States held in Louisiana,— we have no doubt. But the question here is, whether jurisdiction' could be exercised over mortgaged property whilst it was in a course of administration. That no jurisdiction existed in the United States Circuit Court was held in the case before us ; and so it had been held by the Supreme Court of Louisiana in previous cases. But in 1847 that court reviewed its previous decisions, in the case of Dupuy
 
 v.
 
 Bemiss. In the opinion there given,
 
 *181
 
 the jurisdiction of the Federal court held in Louisiana is so accurately and cogently set forth, and the relative powers -and duties of the State and Federal judiciaries are so justly appreciated, as to relieve us from all further anxiety and embarrassment on the delicate question of conflict arising in the case, of Collier
 
 v.
 
 Stanbrough, and again in this cause. It was held in the case of Dupuy
 
 v.
 
 Bemiss, that, where a lien existed on property by a special mortgage before the debtor’s death, and the property passed by death and succession, with the lien attached, into the hands of a curator, and was in the course of administration in the Probate Court, the Circuit Court of the ■United States had jurisdiction, notwithstanding, to proceed agaiiist the property, and to enforce the creditor’s lien, and to decree a sale of th.e property, and that such sale was valid. We accord to this adjudication our decided approbation-; but take occasion to say, that, had we unfortunately been compelled to decide the question without this aid, our judgment would have been, that the decision of the Supreme Court of Louisiana in the cause under consideration was erroneous. It was, also assumed by the Supreme Court of Louisiana,
 
 “
 
 that no-explanation was given how the notes secured by the mortgage-got into Andrew Erwin’s hands in Tennessee, and that no-transfer of the mortgage was proved to have been made to him
 
 ;■
 
 without which, no State judge could have granted an order of seizure and sale without a violation of law.” ' We hold that wherever a judgment is given by a court having jurisdiction of the parties and of the subject-matter, the exercise of jurisdiction warrants the presumption, in favor of a purchaser, that? the facts which were necessary to be proved to confer jurisdiction were proved. It was so held by this court in the case of Grignon’s Lessee
 
 v.
 
 Astor, 2 How. 319, and to the principles .there laid down we refer for the true rule.. The Circuit Court may have erred in granting the order of seizure and sale, but this does not affect the purchaser’s title.
 

 The Supreme Court of Louisiana next held, that '‘it is well settled in our jurisprudence, that, in forced alienations of property, there must bé a reasonable diligence in, and compliance-with, the forms of the law, under a penalty of nullity. When a party resorts to the summary and more severe remedies-allowed by law, he is then held to a stricter compliance with-every legal formality, and the executory process of seizure and sale may be considered as one of severity. It is obtained
 
 ex parte,
 
 and all the proceedings under it are to be scrutinized closely. It necessarily follows, that, if the law has not -been-complied with, the property is not transferred, and the purchaser acquires no' title.” This was the doctrine adopted by
 
 *182
 
 us in the case of Collier
 
 v.
 
 Stanbrough, and is no more open to question in the Circuit Court of Louisiana than it is in the State courts of that State; and the question is, h'ow far the marshal complied with the legal formalities in conducting the. seizure and sale. He was bound to give three days’ notice to the debtor before the seizure, if he' resided on the spot, and if he did not, to count in addition a day for every twenty miles between the residence of the debtor and the residence of the judge to whom the petition was presented. (Code of Practice, 735.) The notice was given to Hector McNeill on the 29th day of May, 1840, requiring him to pay within three days ; the property was seized on the 1st day of June; the advertisements were posted up on the 4th of June, and the property sold on the 6th day of July following. The notice was given in the parish of Carroll, about four hundred miles from New Orleans, where the judge resided, so that more than twenty days less than the due time required by law was allowed to the defendant, Hector McNeill, to appear before the judge, obtain an injunction, and make opposition to the proceeding instituted by Andrew Erwin ; and for this reason the sale would be void, if the defendant, McNeill, had not acted in the matter. But the marshal’s returns are required by the practice in Louisiana to show the various steps in the proceedings, and are part of the record on which James Erwin’s title depends; these returns show that McNeill was served with process on the spot where the property was, and where the advertisements were posted. When the sale came on, the marshal returns, that, “ by agreement of the plaintiff and defendant in the suit, that is, Andrew Erwin and Hector McNeill, the following individuals were selected as appraisers, to wit: Jamés Brooks was selected by the plaintiff, and Jesse Couch was selected by the defendant; who, being duly sworn, proceeded to appraise all the property mentioned in the order of seizure and sale; that they appraised the negroes and the. land; that is, each slave separately, and the land separately.” Both land and slaves being immovable property, if two thirds of the. appraised value had not been bid at the sale, a second was necessary by the laws of Louisiana. (Code of Practice, .670, 671, &c.) And by Art. 676,
 
 “
 
 Slaves seized must be appraised, either by the head or by families; and the other effects must be appraised with such minuteness that they may bo sold together or separately, to the best advantage of the debtor, and as he may direct.”
 

 The marshal’s deed to James Erwin recites in general terms all the necessary • steps required to be taken previous to the sale; and, after describing in detail all the property, the deed says, that
 
 “
 
 the marshal proceeded to cry the aforesaid land and
 
 *183
 
 negroes to go together, at the request of, the defendant, Hector McNeill;. and that James Erwin became the purchaser, for the sum of. sixteen thousand dollars; being more than two thirds the appraised value, of the land and negroes.” The general principle as respects third persons is, that where one having title stands by and knowingly permits another to purchase and expend, money on land; under the erroneous impression that he is acquiring a good title, and the one who stands by does not make his title known, he shall not afterwards be allowed to set it up against the- purchaser. We understand the decisions in Louisiana to conform to this principle, and that it is applicable there in cases of execution sales; and, as lands and slaves stand on the same footing in Louisiana, the rule applies equally to both.
 

 Testing the sale by this principle; how does it stand ?. The purchaser saw the debtor and the marshal select the appraisers, and saw the appraised value, so that bidders could regulate their bids by it; he heard the debtor order the marshal to sell the plantation and slaves together, and they were so sold. Nor did the debtor make any objection to the sale, but .by his acts and presence sanctioned it; and, therefore it cannot be impeached because formal steps were not strictly complied with.
 

 In our opinion, the order of seizure and sale, and the steps taken in its execution, were such as to support the sale adjudicated to James Erwin by the marshal; but we only adjudge the force and effect of the legal proceeding. As to any other questions involved in the cause (if there be any), this court has no jurisdiction, and consequently leaves them with the State courts.
 

 ’ At October term, 1843, the curator, Lowry, had judgment, but the court below ordered, “ that no writ of possession issue in this case to put the plaintiff in possession of the plantation and slaves until he pay the defendant, or deposit in the bands of the sheriff of the parish to the credit of the defendant, $436.55, with interest thereon, at the rate of five per cent, per annum, from the 18th day of March in the year 1843, until the day of payment or deposit.”
 

 In August, 1844, Lowry paid over the money to the sheriff of the parish of Madison; and the sheriff paid it over to Ei win in November, 1844. The writ of error was sued out in May, 1845; and there accompanied the record an assignment of errors. The defendant in error now comes forward, and asks to have the writ of error dismissed on production of a copy, of Erwin’s receipt to the sheriff, on the ground that, by receiving the money, Erwin released the errors complained of.
 

 In the first place, we think the motion comes too late to be .
 
 *184
 
 heard; but that if it could he heard, it is no bar. The proceeding was of a mixed character, partaking more of the nature of a proceeding in equity than one at law; and although it can only come here by writ of error, yet this does not change its character. A writ of error in equity proceedings is not peculiar. The twenty-second section of the Judiciary Act of 1789 gave a writ of error in chancery cases, and so the law continued until 1803. (Ch. 40.) And we take the rule to be, that although a decree ,in equity is fully executed, at the instance of the successful party, he cannot complain of his own voluntary acts, if he does perform a condition imposed upon him before he can have the fruits of the decree, although the other party derives a benefit from such performance. If it was otherwise, a writ of error in such a case as the present, or an appeal in equity, might be defeated after the writ of error or appeal was sued out,' where there was no
 
 supersedeas;
 
 and here there was none.
 

 Five years is the time allowed for prosecuting appeals to •and writs of error out of this court, and in many cases decrees and judgments are executed before any step is taken to bring the case here; yet in no instance within our knowledge has an appeal or writ of error been dismissed on the assumption ■that a release of errors was implied from the fact that money or property had changed hands by force of the judgment or decree. If the judgment is reversed, it is the duty of the inferior court, on the cause being remanded, to restore the parties to their rights.
 

 For the' reasons above stated, we order the judgment of the Supreme Court of Louisiana to be reversed.
 

 Mr. Justice WAYNE and Mr. Justice DANIEL dissented.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the Supreme Court for. the Western District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Supreme Court in this cause be and the same is hereby reversed, with costs, and that this causg be and the same is hereby remanded to the said Supreme Court, with directions to proceéd therein in conformity to the opinion -of this court.