## Joseph S. Mitchell *v.* M. C. Shell, Adm'r.

1.  Vendors' Lien—Probate Court—S. sold to May a tract of land for $966.91, on the 1st day of January. 1862, executed the usual bond for title, and M's note for the purchase money, due twelve months after date. S. died in 1865. Defendant in error as administrator, filed his petition in the probate court, under the provisions of the act of February 21, 1867, for authority to make and tender a deed to the vendee. *Held:* That the act authorized the probate court to act on the petition of an adminstrator, in order to collect or institute suit for the purchase money, and could not proceed beyond this, and in the absence of payment, voluntarily, or by suit, the decree of title is nugatory, as that court had no power to enforce specific performance.

2.  Chancery Court—Specific Performance—Who are Proper Parties—The deed tendered by the Administrator of the deceased vendor, executed by authority of a decree of the probate court, is made the basis of this action, without making the heirs of the vendor, parties to the action. In proceedings in equity by the Ad-

ministrator of a deceased vendor, to enfore specific performance of a contract for the sale of land, the heirs of the vendor are necessary parties. A material concomitant of the proceeding and decree, is to divest the heirs of the title, which immediately vests in them upon the death of their ancestor.

The force of the decree of the probate court is limited by the terms of the act of 1867, to a "conveyance in order to collect, or to prosecute, or to institute suit for the purchase money," and by adjudications to a case where purchase money has been paid.

Appeal from the chancery court of Chickasaw county, HON. AUSTIN POLLARD, Chancellor.

The bill alleges, that complainants, intestate, on the 1st day of ———, 1862, sold to J. S. Shell, the tract of land in controversy, for $966.91, executed the bond for title, and the vendee's note for the purchase money, due twelve months after date, and died without collecting the note, or making the deed. Complainant obtained letters of administration, and filed his petition in the probate court, and obtained a decree authorizing him to make a deed to the vendee, in order to tender and collect the purchase money, or in default, to institute proceedings to enforce a specific performance of the contract. That defendant refused to pay the purchase money, when the deed was tendered, and that defendant is in default.

The bill prays for a decree for the sale of land, and that the proceeds be applied to the payment of the amount found to be due to the estate of his intestate.

To this bill defendant demurred, and assigned four causes of demurrer, to-wit:

1. The bill seeks a specific performance of a mutual and dependant contract, and does not show an offer to comply on the part of the vendor, by tendering a good and sufficient deed and title to the land.

2. That the bill fails to show that the probate court had jurisdiction of R. L. Shell's heirs at the time decree was rendered, and fails to show that the deed offered is sufficient to convey good and sufficient title to the land.

3. That the deed tendered shows on its face that it does not convey to defendant the title to the land, and

4. That no letters of administration is annexed to, or filed with the bill.

The demurrer was overruled, and defendant required to answer, to which defendant excepted.

The answer admits the contract of sale, denies that it was to be paid in gold, or other money than Confederate treasury notes, or such other money as was currently received when the notes fell due; denies that a good and sufficient deed was ever tendered to him before the filing of the bill, or that complainant has ever offered to perform the contract of his intestate.

Denies that any valid decree was ever rendered by the probate court, such as to divest title out of the heirs of R. L. Shell, and vest complainant with power to convey. Denies the jurisdiction of the probate court to make the decree, or that it had jurisdiction of the heirs of R. L. Shell.

The court decreed a sale of the land as prayed for in complainant's bill, and the defendant appealed to this court, and assigns for error:

1. The court below erred in overruling defendant's demurrer to complainant's bill.

2. The court below erred in permitting complainant, after answer of J. S. Mitchell was filed, to amend his bill by inserting the names of E. Bouchee and E. W. Burks.

3. The court below erred in its order striking out and disallowing parts of the answer of Burk and Bouchee.

4. The court below erred in admitting as evidence in the cause, the deed of M. C. Shell as administrator of R. L. Shell, deceased.

5. The court below erred in sustaining the report of the commissioner to take and state an account,    *    *    *

6. The court below erred in confirming the report  *  *  * for the amount of $1391.31.

7. The court below erred in rendering its final decree for the amount reported, and decreeing a sale of the land for the payment of the same.

8. The court below erred in refusing to dismiss as to Burk

and Bouchee and without rendering any decree as to them, or either of them.

9. The court below erred in refusing to submit the issue of fact to a jury.

*Martin & Bates,* for appellant:

It cannot be denied that the contract is mutual and dependant. That class of contracts has been recently construed by this court in Robinson v. Harbour, 42 Miss. 795. The true Rule, as settled in the above cited case, makes this contract mutual and dependant.

The deed tendered by the administrator does not convey such a title as defendant contracted for. The vendor bound himself to make to the vendee a title to the said land, and the language here used must mean, a good and sufficient title, free from all incumbrance.

Does the deed tendered convey such a title? It is said in the bill, that a decree was made and entered, in the probate court, authorizing and empowering Shell, administrator, to make and execute to Mitchell a deed to the land which should convey to him, all the *right, title and interest of the heirs* of the said R. L. Shell, in and to the land; and that in pursuance of said decree, the administrator, M. C. Shell, thereafter tendered to the said Mitchell a good and sufficient deed, *as required by said decree.*

The sufficiency of such a decree depends upon many contingencies, which, under the contract, cannot rightly be imposed on Mitchell.

At the death of R. L. Shell, such legal title as he *then* had in the land, vested in *his heirs.*

The bill does not aver that the probate court had jurisdiction to render the decree; but, on the contrary, the bill and exhibits show that at the rendition of the decree, the probate court did not have jurisdiction of the parties.

The process of the court and the mode of service show, by the endorsements thereon, (all made part of the bill, as ex-

hibits thereto), that the service is not sufficient to give the court jurisdiction of the parties.

Hence, the decree is void, and the deed made and tendered in pursuance of it, is also void.

The records show that the subsequent rulings of the court below were too reckless of the law, to reach the ends of justice.

The specialities of the contract, not in the writing, but provable by *parol testimony* under the ordinance of 1865, was a question which, in its nature, required the intervention of a jury.

The proof shows that it was contemplated by the parties that the money was to be paid in Confederate money; and, also, that at the maturity of the note, Confederate money was of value compared with United States legal tender notes, as $2.50 of Confederate money to $1.00 in legal tender bills. Moreover, it is insisted that the judgment, or decree of the court, is for a larger sum than that given or intended by the commissioners. In their report they say, they have computed and ascertained the amount due from defendant, J. S. Mitchell, to complainant as follows:

Amount of principal and interest, *less credits*, $1391.31. This means *less credits* thereon endorsed—and yet the court rendered a decree for the full amount of $1391.31, and this over and above all credits. Cited: Washington v. Hill, 10 S. & M. 560; Greenwood v. Ligon, 10 S. & M. 615; Liddell v. Sims, 9, S. & M, 596; McMath v. Johnson, 41 Miss., 439, 456; Robinson v. Harbour, American Law Register, page 355; Ligon v. Bishop, 44 Miss., 527, 530.

*Tucker, Harper & Buchanan,* for appellees:

The administrator in this cause, before trying to enforce the payment of the debt, due his decedent for land, very properly filed his petition in the probate court, in accordance with the act of 1867, and procured an order to make a deed, and did tender the deed. Now, the resistance to the bill is made, we presume, for delay. There was a service of process on the heirs and a recitation of service.

If the process was not served in accordance with law, this does not make it void, but merely voidable. It cannot be attacked collaterally. The authorities on this are numerous, strong, unequivocal, and unvarying, and this appeal is only for delay. We call the attention of the court, if necessary, to the principles declared in the following cases: Doe v. Bradley, 6 S. & M., 485 ; Campbell v. Hays, 41 Miss.; Hanks et al. v. Neal, 44 Miss., 213. The probate court is not required to state the evidence on which its orders, judgments and decrees are based. Root v. McFerrin, 17 Miss., 409 ; 3 Howard, Miss., 205, 214. Acknowledgment of service sufficient. 1, 5 and 6 Howard, 106, 295, 43 ; Dogan v. Brown, 44 Miss., 230 ; Work v. Hann, 38 Miss., 103 ; Cason v. Cason, 31 Miss., 578.

Tarbell, J., delivered the opinion of the court :

R. L. Shell, deceased, in his life time, to-wit: On the first day of January, 1862, sold a tract of land, described in the record, to Joseph S. Mitchell, for the sum of $966.91, payable in one year from that date, secured by the promissory note of the vendee, the note bearing date January 1, 1862, payable January 1, 1863, and is not stated to bear interest. The vendee was placed in possession of the land thus sold, and the vendor executed and delivered to the vendee the usual bond for title, on payment of the purchase money. R. L. Shell died in 1865. In the meantime, and during the life of the deceased, Mitchell had paid him $200 on the note, and after his decease, he paid $100 to the administrator of his estate. Letters of administration on the estate of the decedent were granted to M. C. Shell in October, 1865. In 1868, on the petition of M. C. Shell, administrator, the probate court of Chickasaw county authorized and empowered him to make and execute a deed of the lands described, conveying to said Mitchell all the right, title and interest of the heirs of said R. L. Shell, deceased, to said lands, upon the payment, by said Mitchell, of the purchase money due. Accordingly, a deed was prepared and tendered to, and payment demanded

of, said Mitchell, by the administrator. Mitchell, however, declined either to accept the deed or to make payment, as demanded, specifying, at the time, his objections, viz.: defective title. Thereupon the administrator filed, in the chancery court of Chickasaw county, a bill setting out the foregoing facts, and the proceedings in full in the probate court, authorizing the administrator to convey, on payment of the purchase money. The balance, averred in the bill to be due, is $1400. It is also averred therein, that the possession of the lands involved is now in E. W. Burks and E. Bouchee, by purchase from Mitchell, original vendee. And the bill prays that Mitchell be required to pay the purchase money due by a day certain, in default of which, that the lands be sold, etc. There was a demurrer to the bill, stating for cause, among other things, that the title tendered was illegal and void, on its face, and for want of jurisdiction by the probate court of the parties, or the subject matter. The demurrer was overruled, and the respondent answered, claiming that the note was executed under an agreement of payment in Confederate money, and that the deed tendered did not convey a legal and valid title. The answer denies the jurisdiction of the probate court over the subject, matter or the parties, and as to the latter, that there was no legal service of citation upon the heirs of the decedent, whereby they were not made parties to the proceedings by which the probate court decreed title to be made to Mitchell, by the administrator.

It will be observed that the heirs of the vendor are not parties to this proceeding in chancery, but that the title decreed by the probate court is made the basis of the demand for specific performance, and of the bill and decree. Such proceedings were had in the chancery court that a final decree was rendered in accordance with the prayer of the bill, viz.: That there was due $1391.31, and that this sum be paid in sixty days, or, in default thereof, that the land be sold. The sale was directed to be for cash; and for any de-

ficiency, execution was awarded against J. S. Mitchell, the original vendee. Hence the case comes to this court. The errors assigned are as follows :

1. Overruling demurrer to bill.

2. Permitting complainant, after answer of defendant Mitchell, to amend his bill, by inserting the names of E. Bouchee and E. W. Burks, as defendants therein.

3. Disallowing and striking out parts of the answers of Burks and Bouchee.

4. Admitting as evidence the deed of the administrator.

5. Sustaining the report of the commissioners, because they refused to take and report the testimony of Burks and Bouchee, offered by defendant Mitchell, as to an agreement that the notes herein were payable in Confederate currency.

6. Confirming the report of the commissioners, that there was due the sum of $1391.31, objected to by defendant Mitchell.

7. Rendering a final decree for $1391.31, in favor of complainant, and for sale of the land for payment of that sum.

8. Failing to decree a discontinuance or any other decree as to Burks and Bouchee.

9. Refusing to submit to a jury, as demanded, the issue made by the answer as to the payment of the debt involved in the bill, in Confederate money.

The view taken of this case renders unnecessary a discussion, in the mode presented, of the several questions involved in the assignment of errors. Instead, the following are believed to present more correctly the merits of the controversy between the parties.

1. Have the proceedings and decree of the probate court any legal or proper standing in the case at bar?

2. Are the heirs of R. L. Shell, deceased, necessary parties to the present controversy?

3. Ought the respondent, Mitchell, to be allowed to show that the note exhibited in the bill, dated January 1, 1862, payable January 1, 1863, for a sum certain, in dollars and

cents, and without reference to the funds in which it was payable on its face, was in fact, by parol agreement of parties, payable in Confederate money? And ought the decree to be for the equivalent of the then value of the latter?

It has been seen, that in 1868, the purchase money still remaining unpaid, the complainant herein proceeded by petition in writing, in the probate court, under § 3, of an act of the legislature, approved February 21, 1867, pamphlet acts, p. 526, to obtain a decree, authorizing the administrator to convey to Mitchell, the title of the heirs of the decedent, on his paying the balance of the purchase money due. The petition sets forth the sale to Mitchell, his indebtedness, delivery of possession, with bond for title, the death of the intestate, letters of administration, the heirs of the deceased, with their residence, and contains the statement: "Your petitioner is desirous of closing up the administration of the estate of R. L. Shell, deceased, at as early a day as may be practicable, and in the event that the said J. S. Mitchell should pay the amount of money due for said lands, or your petitioner should find it necessary to bring suit against him for the money due thereon, he desires authority to make title from your honorable court, to J. S. Mitchell, or any subsequent purchaser or purchasers of said lands, to whom said Mitchell may desire title made." The authority prayed for was granted, a deed was prepared accordingly, and tendered to Mitchell, who declined, on the several grounds indicated, to accept it, or to pay the purchase money claimed and demanded.

Thereupon, without suit on the note or other proceedings for its collection, the administrator sought the aid of chancery to enforce specific performance, omitting to make the heirs of the deceased, parties to the action, and stating the decree of the probate court as the basis of the relief prayed for in the bill.

In precisely this case, according to the authorities, (Story's Eq. Pl. § 160, and cases therein cited,) viz: proceedings in equity, by administrator of a deceased vendor to enforce

specific performance of a contract for the sale of land, the heirs of the vendor are necessary parties. A material concomitant of the proceeding and decree, is to divest the heirs of the title, which immediately vests in them upon the death of their ancestor. The force of the decree of the probate court is limited by the terms of the act of 1867, to a "conveyance, in order to collect, or to prosecute, or institute suit for the purchase money," and by the adjudications to a case when the purchase money has been paid. In the case at bar, as already stated, the purchase money was not only not paid, but its payment was peremtorily declined. No suit for the collection of the purchase money was instituted or other step taken to coerce payment. It will hardly be contended that the probate court had power to enforce specific performance. If not, that court had exhausted its authority when it decreed a conveyance on the payment of the purchase money, the voluntary payment of which, would doubtless, have consummated the title, though the legality of service of process upon the heirs, is seriously questioned in the record. Waiving this question, what force and effect have the proceedings and decree of the probate court in the case at bar? Do they excuse the necessity of making the heirs parties hereto?

The final decree of the Chancellor proceeds, without reference to the action of the probate court, to divest the heirs of the title, and to direct a sale. Not being parties thereto, are the rights of the heirs at all affected by this decree? And would the party thereby acquire the legal title? which is an essential part of an object of an action for specific performance.

In this connection, in view of the arguments of counsel here, and the manner in which the case was presented in the court below, a few observations may be made upon the jurisdiction of the probate court in a case of this sort, in aid of the rights of these parties.

The statute of 1867, referred to, reads as follows:

"SEC. 3. *Be it further enacted,* That in all cases where any

decedent has heretofore, or shall hereafter, in his lifetime, make a bond or other contract in writing, to convey any real or personal property, and has, or shall die without making conveyance, and *it shall be necessary to make such conveyance, in order to collect, or to prosecute, or institute suit for the purchase money* of such real or personal property, it shall be lawful for the executor or administrator of such decedent to apply, by petition, to the probate court of the proper county, and the court shall make an order, directing the executor or administrator to make the required conveyance, which shall have the same force and effect as if made by the decedent in his lifetime; *Provided*, the devisees and heirs, in case of real property, shall be made parties, and cited as in case of application to sell real estate for the payment of debts."

The purpose of this enactment, it will be noted, by its own terms, is to enable the administrator to make a conveyance, if it shall be necessary, in order to collect, or to prosecute, or institute suit for the purchase money.

The code of 1857 only authorized the vendee to apply to the probate court for a decree directing title to be made by the administrator, on payment of the purchase money. Code of 1857, p. 458, art. 137.

By the Constitution under which the rights of these parties became fixed, "full jurisdiction in all matters of equity" was confided to the court of chancery, while upon the probate courts was conferred "jurisdiction in all matters testamentary and of administration, in orphans' business, and allotment of dower in cases of idiocy and lunacy, and of persons *non compos mentis*."

It would seem to be indisputable, that the enforcement of specific performance is a matter of equity, and not of probate jurisdiction. This is undoubtedly a correct proposition. Yet it has been held that, as the constitution has not defined what are "matters testamentary and of administration," and as the legislature may "prescribe the powers, or

rights, and the duties of executors and administrators, it is manifest," say the court, in Servis v. Beatty et al., 32 Miss., 86, " that the import of these terms may be more or less comprehensive, according to the prevailing system."

That case arose under the act of 1821, Hutch. Dig. 671, § 114, and was decided in 1856. The statute referred to as found in Hutchinson's Code, is as follows:

"Any person who shall sell lands, tenements or hereditaments, and enter into bond, or other written agreement, to make titles thereto, and shall depart this life without having made such titles, then, and in that case, the person to whom such bond or other written agreement was given, his executor or administrator may petition the orphans' court of the county where letters testamentary, or of administration of such deceased person, was granted, to order the executor or administrator to make titles, agreeably to the bond or other written agreement given by the testator or intestate; and it shall be the duty of such court to cause notice of such petition to be published in some newspaper in this State, for at least two months, if the party reside without the limits of the county, or to cause a citation to issue, returnable to some regular term of said court if the party reside in the county, and the court shall in either case, if they find that such sale was fairly made, order the executor or the administrator to make titles according to the tenor of the bond or other written agreement, to the lands, tenements or hereditaments so sold by his testator or intestate; and any executor or administrator refusing to comply with such order may be imprisoned by the court, for contempt, until he or she comply with the order made as aforesaid; *Provided,* that either party dissatisfied with the sentence, order or decree of the orphans' court, or any petition as aforesaid, may take an appeal, as in other cases."

This statute was construed to apply to, and to be constitutional only, in cases where the purchase money had been paid to the vendor in his life time, or to his executor or administra-

tor after his demise.  Servis v. Beatty *et al. supra.*  In that case the probate court proceeded upon a petition which falsely and fraudulently represented the purchase money to have been paid.  After a sale of the lands, the litigation arose, giving rise to the opinion from which the following quotations are made:

"The authority of the court of probates in certain specified cases, and under prescribed conditions, to order the executor or administrator to make a deed for the land, is conferred expressly by the statute of the 26th November, 1821, enacted under the first constitution of this State; the 7th section, 4th art. of which, declares that the legislature should have power to establish, in each county within this State, a court of probate for the granting letters testamentary and of administration, for orphans' business, for county police, and for the trial of slaves.  All laws in force within this State, at the adoption of the revised constitution, not repugnant to its provisions, were expressly continued in force by the convention.  The enquiry then is, whether this act, so far as it conferred the specific jurisdiction in question, is not in conflict with the revised constitution, and therefore annulled by it.
\*     \*     \*

"It is conceded that the power to decree the specific performance of a contract, is an authority which necessarily pertains to a court of equity.     \*     \*     \*

"To determine the jurisdiction of any of the courts, we must look to the constitution, the common source of the jurisdiction of all; and we there find, that the court of probates is clothed with full authority over matters testamentary and of administration.     \*     \*     \*

"The difficulty is admitted, of determining what subjects are comprehended by the terms matters testamentary or of administration.  The constitution has prescribed no rule.  And it is competent for the legislature to prescribe the powers, or rights, and the duties of executors and administrators; it is manifest that the import of these terms may be

more or less comprehensive, according to the prevailing system. The undivided lands of a decedent, descend to his heirs; and hence are not, generally, a matter of administration. But *under the conditions prescribed in the statute*, they become as much a matter of administration as the personalty of the intestate. Whenever the legal representative of a decedent is charged with a duty in reference to his real estate, the real estate, of necessity, becomes a matter of administration. And the title which is requisite to the discharge of the duty, vests in the representative, by operation of law. When the owner of land gives bond to make title on payment of the purchase money, he has elected to convert his land into money—his realty into personalty; and when the money is paid, the beneficial interest becomes completely vested in the purchaser. Nothing but the mere legal title remains in the vendor, which would not be available, in law or in equity, either to him or his heir. Brown v. Weart, 7 How. 181; Morey v. Toney, 7 S. & M. 22; Harmon v. James 7 ib., 111. The case, we apprehend, would not be in the slightest degree altered, when the money was paid to the administrator instead of the vendor. In the latter case the heir could get up no claim to the purchase money, and the mere naked legal title, if in such case it could be regarded as a descendible estate, would be unavailing against the beneficial title of the purchaser. In the former the heir would be entitled to the proceeds of the land, which his ancestor had determined to convert into money. At all events he would not be entitled to claim both the land and the money; and the receipt of the latter, by the administrator, would effectually preclude him from using the naked legal title for any beneficial purpose whatever.

*In such cases*, the law having vested the court of probates with jurisdiction to compel the administrator to make the title, it must be considered that he was vested with the title requisite to enable him, under the sanction of the court, to execute the contract of his intestate. The case is not materi-

ally different from those in which the administrator is re-
quired and authorized to sell and convey the real estate of
the decedent to pay the debts.    We think, therefore, that the
authority, claimed for the court of probates, *in such cases*,
to compel the administrator to make the title, may be con-
sidered jurisdiction in the matter of administration, and
hence, was conferred under the sanction of the constitution.
This seems to have been the ground upon which the legisla-
tion proceeded in 1821.    The validity of the act of that date
was never, as far as we are informed, brought in question.
And when the revised constitution was adopted, the presump-
tion exists that the convention, in assigning the jurisdiction
to the court of probates, intended to extend it to those sub-
jects which were, according to the popular and legislative
acceptation of the terms, matters " testamentary and of ad-
mistration."

In the light of this adjudication, the import and terms of
the several statutes of 1821, 1857, and 1867, may be briefly
stated.    That of 1821, though general and unconditional
in its language, was construed, by the adjudication just
quoted from, to apply only in cases when the purchase
money had been paid.    The code of 1857, like the act of
1821, authorized the probate court to decree title to be made
only on the petition of the vendee, and otherwise, must be
construed in accordance with the reasoning in Servis v.
Beatty.    There is no essential difference in the language of
these two enactments.    In fact, they are almost identical in
phraseology, save as to the designation of the courts—pro-
bate being substituted in one, for the orphans' court in the
other.    The statute of 1867 differed from previous statutes,
in this; that it authorized the probate court to act on the
petition of the administrator of a deceased vendor, when " it
shall be necessary to make such conveyance in order to col-
lect, or to prosecute or institute suit for the collection of the
purchase money."    Beyond this it could not proceed.    It
had no power to enforce specific performance.    In the ab-
sence of payment, voluntarily, or by suit, the decree of title

is nugatory.  When the deed was tendered, and payment refused, the character of the transaction, in the absence of a collection of the purchase money by suit, instantly changed into one requiring the interposition of chancery for specific enforcement.  The jurisdiction of the probate court was not, and probably was not intended to be, enlarged by the act of 1867.  According to the decision in Servis v. Beatty, it could not be extended to embrace a proceeding for specific performance.  The same constitutional provision, construed by the court in Servis v. Beatty was in full force when the statute of 1867 was enacted, and it must hence be understood to apply only to a case when the purchase money has been paid, either before or after the decree directing title to be made.  It is presumed that in case of payment after the decree, the title would be upheld; but this is extra judicial, as the point is not before the court.  This is immaterial, however, in the view entertained of this branch of the case.  The probate court, by the terms of the statute under which it acted, must have proceeded upon the theory that the purchase money would be paid on demand and tender of deed, or that suit would be instituted for its collection.  Voluntary payment was refused, and a suit for collection was not undertaken.  Probably the latter course was abandoned as likely to be fruitless.  In short, the decree of the probate court was unavailing, and, in the absence of payment of the purchase money, voluntary or enforced, went for naught.

In resorting to another forum, the rules of the latter, applicable to the case presented, must govern.  One of the very first questions to be determined by an attorney or solicitor, when preparing to institute an action at law, or proceeding in chancery, is as to the necessary parties.

To illustrate the idea that, when the deed was tendered and its acceptance declined, followed by an absolute refusal to pay the purchase money, this case then resolved itself into one for specific performance, of which equity alone has jurisdiction, reference is made to Servis v. Beatty, *supra ;* 6

---
---

How., 527; 2 S. & M. 590; 4 ib. 294; 10 ib. 184; 23 Miss., 311; 36 ib., 419; 44 ib.; 42 ib., 795.

With reference to the question of currency propounded, an ordinance of the Constitutional Convention of 1865, approved August 23d, of that year, ordained, that in all " cases in which a party has executed a note or agreement in writing for the payment of money, parol testimony shall be admissable to prove whether or not such contract contemplated specie currency, and to show what amount in specie the payee or obligee has a right, equitably, to demand or recover." Proceedings of Convention, 1865, pp. 40, 41, § 3. And this is made to apply to all cases arising after January 9, 1861.

Referring, without discussion, to the adjudications of the Supreme Court of the United States, upon this subject, as well as to the rulings of this court on the same subject, it is *Held:* That the court erred in excluding evidence to prove the note payable in Confederate money.

Decree reversed and cause remanded.