No. 11,564.

SAM. HENDERSON, JR., VS. F. W. ELLERMAN.

A tax sale made in exact conformity with the requirements of Act 82 of 1884, and the principles announced in the *Lake* [40 An. 142] and *Douglass* [41 An. 765] cases, will be affirmed to pass a legal and valid title—there being no question raised as to the legality in the assessment of the property.

APPEAL from the Civil District Court for the Parish of Orleans.
    *Theard, J.*

*William C. McLeod* for Plaintiff, Appellee.

*Ernest J. Wenck* for Defendant, Appellant.

The opinion of the court was delivered by

WATKINS, J.   The object of this suit is to compel defendant to accept title to certain lots of ground situated in the city of New Orleans, pursuant to his contract with the plaintiff.

It is in the usual course of such proceedings.

The answer of the defendant is a general denial, coupled with the special defence that the plaintiff did not tender him a clear and unencumbered title; that the title tendered is of no value, the true owner never having been divested of his title by the tax collector's sale to plaintiff's author—said property having been sold for taxes of 1872 to 1879, inclusive, " without due process of law, or notice to said owner." That it does not appear that said Edward Dans—"the original and true owner"—at the time was a resident of this city, nor that he was alive; and that said sale, in default of due process, is an absolute nullity.

The final averment is "that unless plaintiff tenders a clear and uncumbered title," he is not obliged to comply with his contract to purchase from the plaintiff.

From a judgment in favor of the plaintiff, the defendant prosecutes this appeal.

The plaintiff acquired title from Patrick Harnan, who was adjudicatee thereof, at a tax sale made on 14th of September, 1885—the property having been sold for the delinquent taxes of Edward Dans.

Reference to the tax collector's deed discloses the following facts, viz.:

1. That in making said sale the tax collector acted under authority of Act 82 of 1884.

2. That the sale was proceeded by advertisement that said property would be sold for all unpaid taxes due thereon prior to December 31, 1879.

3. That said advertisement included the description of the prop-

.erty, same as that of property in suit, and was to be sold as the property of Edward Dans, to enforce the payment of the unpaid taxes due on same for the years 1872, 1873, 1874, 1875, 1876, 1877 and 1879, aggregating the sum of forty-one dollars and forty cents due to the State, and unpaid at the time of the sale.

4. That said taxes were duly and legally assessed in the name of Edward Dans for those several years, and of said property Edward Dans, or his estate, or his heirs are the present owners.

5. That after having complied with all legal requisites he sold said property at public auction and adjudicated same to Patrick Harnan for the sum of twenty-five dollars, he being the last and highest bidder; "said bid being in full and final payment and satisfaction of all the State, city, parish and municipal taxes due on said property prior to December, 1879, according to the provisions of Act 82 of 1884."

6. That there were due on said property at that time city taxes to the city of New Orleans for the same years in which the State taxes enumerated are due, aggregating in amount forty-eight dollars and fifty cents.

7. That in pursuance of the provisions of Act 82 of 1884, and in consideration of the aforesaid sum of twenty-five dollars paid by said Patrick Harnan, the receipt whereof is acknowledged, he, the tax collector, for and in the name of the State, sold, assigned, transferred and delivered to said purchaser said property and improvements, "granting and giving to said purchaser an absolute and irredeemable title to said property, with the right to immediate possession thereof, and free from all mortgages, liens and privileges," etc.

In addition to the proof furnished by the recitals of this deed, and the admission that the plaintiff had purchased the property from the adjudicatee, there was put in evidence extracts from the assessment rolls for all the years that are enumerated in the deed, which show that the property was actually assessed in the name of Edward Dans.

The advertisement of the tax sale was also put in evidence, and it fully conforms to the recitals in the act of sale.

There was produced and filed in evidence a certificate from the conveyance office, showing no alienation of said property at any time by Edward Dans to any one.

The tax adjudication was evidenced by an authentic title of due form, executed on the 6th of February, 1886, and duly registered in the conveyance office on the same day.

There is an admission in the record to the effect that the property was purchased by Edward Dans from John Heim, by an act of sale passed before Romando de la Cueva, a notary public of the city of Mexico, on April 9, 1860.   That a copy of this act was deposited by John Kruttschnitt, acting as the agent of said Dans, with the records of F. Grima, notary of this city, on July 25, 1860, evidenced by an act of deposit duly recorded in the office of the register of convey-ances.

The plaintiff testifies that he is in possession of the property as owner, and has paid all the taxes upon it.   Says that he has made numerous inquiries, and has tried to ascertain the whereabouts of Edward· Dans without avail.   He could not be found.   Says that he did not know at the time that he acquired this property that Dans was a resident of Mexico.

There is no proof on the subject.   This is all the evidence the record affords.

On this state of facts the only points made or contended for by de-fendant's counsel are: (1) that it does appear "that Edward Dans was a resident of Mexico;" and (2) that the burden was on the plaintiff to have proven that Edward Dans, the delinquent tax-payer, was alive, and a resident, or if dead, that his heirs were duly notified of the sale of the property for taxes, and at the time of the publication of the advertisement of the sale of the property of said delinquent.

And the contention of defendant's counsel is that as there is no proof of notification having been given to the delinquent or to his heirs, the sale was absolutely void.

The tax sale under consideration was made under the same legis-lative act that the sale was made to Orloff Lake, and which this court had occasion to examine and interpret in the case entitled *In the Matter of Orloff Lake*, 40 An. 142.

Amongst the numerous defences made in the case, one was that no party "interested in said property did receive any notice of said sale;" and the further point was made that the law was unconstitu-tional and void, *inter alias*, because it "provides for notice by *public citation only*, in violation of Art. 210 of the Constitution"—a point not made in this case.

An examination of that decision will show that notice of sale falls within the fifth paragraph of that statute, which enumerates the *non-*

*essential* requisites of a tax sale, of the performance of which the tax deed is declared to furnish *conclusive* evidence, viz.:

" 5. That all of the prerequisites of the law were complied with by all the officers, from the assessment up to and including the execution and registry of the deed to said purchaser," etc.

And upon careful consideration and analysis of the provisions of that statute, we said:

" The Legislature only intended to provide the manner in which *valid* sales could be effected of property on which delinquent taxes are due the State prior to the year 1879, and whereby such taxes could be collected."

We further held that, inasmuch as tax delinquents had neglected to avail themselves of the grace provided for in the constitutional ordinance for the relief of delinquent tax-payers, by paying the principal of the taxes due within the time specified, that " the property upon which the taxes and licenses are due *shall be sold in the manner to be provided by law, and the title of the purchaser shall be full and complete.*"

This is the language of the *organic* law. It declares in plain and emphatic terms that in the event of the tax delinquent's non-acceptance of the grace of the ordinance, that the property subject to the taxes " *shall be sold in the manner provided by law;*" that is, "*in the manner*" the General Assembly might thereafter direct. In the exercise of that constitutional mandate the General Assembly enacted Act 82 of 1884, and of the provisions of that act we said in the *Lake* case, viz.:

"It deals exclusively with the *proceedings* necessary to effectuate *sales* of such property as is subject to such delinquent taxes, and the *execution* and *effect* of tax titles evidencing such sales. It is a *remedial* law authorized by the terms of said ordinance."

This suit is exactly parallel to Martin vs. Langenstein, 43 An. 791, and which was, by our opinion therein, distinguished from Breaux vs. Negrotto, 43 An. 426, which involved a sale made under Act 77 of 1880, in the collection of " unpaid taxes of 1881," a wholly different question from the one presented here.

Inasmuch as the act is a highly penal statute and authorized by the *terms* of the ordinance, the Legislature had unrestrained authority over the *manner* in which such sale should be made, and over *proceedings* incident and leading up thereto.

In the case of *In re* Douglass, 41 An. 765, the same act was again carefully scrutinized and considered, and the validity of a sale under it was affirmed.

Of that statute we said: "It is a remedial and healing statute, * * * the effect of which is to cure defects in prior tax proceedings by making the tax deed *conclusive evidence* that the requirements of the law in certain matters had been complied with."

Again: "But outside of these fundamental and *quasi*-jurisdictional requirements, and *with reference to the time and manner* in which the tax proceedings shall be conducted, the *legislative discretion is supreme and can not be judicially controlled.*

"And the Legislature may, in advance, prescribe and direct the *time and manner* in which they shall be done, * * * *and may constitutionally provide that the tax deed shall be conclusive evidence* that such directions were complied with, as to *time, manner, and every other matter originally within the legislative discretion.*"

These two decisions were most carefully considered and deliberately expressed, and have been constantly adhered to since, without any modification in respect to *sale* proceedings.

The case of Augusti vs. Heirs of Lawless, 45 An. 1370, dealt with the question of assessment—one of the essential elements of tax proceedings and sale—a question not propounded in the instant case.

We have been thus careful because of the fact that a somewhat similar question was raised and decided recently by the Supreme Court in Marx vs. Hanthorn, 48 U. S. 172. But a simple inspection of the opinion in that case shows that it is wholly different from the Lake and Douglass cases, in that it treats of an *ordinary* tax statute, enacted by the Legislature of the State of Oregon—one not grounded upon a constitutional provision, as Act 82 of 1884 is. That opinion says: "It is competent for the Legislature to declare that a tax deed shall be *prima facie* evidence not only of the *regularity of the sale* and of all prior proceedings, and of the title of the purchaser, but that the Legislature can not deprive one of his property by making his *adversary's claim to it,* whatever that claim may be, *conclusive of* its own validity, and it can not therefore make the tax deed *conclusive evidence of the holder's title to the land.*"

But no such power as that was ever by this court affirmed to exist

in the Legislature, even under the unlimited grant of authority that is contained in the constitutional ordinance.

On the contrary it was distinctly affirmed "that precedents are not wanting to show that in several sister States their Legislatures have been recognized as having the power of making such deeds *conclusive* as to *non-essential* prerequisites, but the exercise of legislative power has never been sanctioned so as to make such deeds *conclusive* as to essential prerequisites."

The two decisions are not at all in conflict, and they may stand together. This more fully appears by other decisions of that court.

But an examination of that case will show that the Oregon tax statute therein involved only made, under circumstances detailed, the tax title *prima facie* evidence of the orderly course of proceedings in effecting the sale, and that it did not declare that in any event the tax title should furnish *conclusive* evidence thereof.

In Callahan vs. Hurley, 93 United States, 387, the Supreme Court affirmed the validity of an Iowa statute exactly similar in terms to those of our Act 82 of 1884. In that case complainant set up his title as an enterer of the lands from the government, and the defendant claimed ownership under a tax sale made in 1864. After quoting from the statute—*vide* page 389—the court say:

"The whole act exhibits an intention of the Legislature to enforce the payment of taxes by securing purchasers at tax sales in their purchases, and thus make it dangerous for owners of property to neglect payment of taxes due the State. It removes difficulties which had before existed in the way of establishing a tax title, and at the same time it works no injustice to owners of land subject to taxation."

In speaking of the tax title they say:

"If the act is to have any effect at all, it is plain that the deed cuts off most of the averments upon which the plaintiff bases his attempt to obtain the cancellation he seeks. It is not open to him to aver and prove any allegation he puts forward to establish the invalidity of the deeds, *except* that the property was *not subject to taxation*, and that there was a fraudulent combination of the defendant with others to prevent bidding."

The court after considering the matter very carefully said:

"All the questions presented in this case have been decided by the Supreme Court of Iowa, and decided adversely to the complainant.

Phelps vs. Meade, 41 Iowa, 470. That case was an attempt to set aside a tax deed of lands sold by the treasurer of Cass county at the sale in January, 1864. The averments of the bill were the same as those made in this case, and the case was heard upon the evidence taken upon the case now before us. The rulings of the court were, that, if there was a *bona fide sale*, in substance or in fact, the tax deed is *conclusive* evidence that it was made at the proper time and conducted in the proper manner. And when a deed, regular in form, recited that the land was sold    *    *    *    it was held that a sale made at any time during the continuance of the sale (for delinquent taxes) was valid," etc.

The decree of the court dismissed complainant's bill and enforced the tax title.

In De Treville vs. Smalls, 98 United States, 517, the court sustained a sale made under an act of Congress of February 6, 1863, similar in terms to our statute, and the court say:

"No doubt it has been decided that statutes which make a tax sale *prima facie* evidence of the *regularity* of the sale do not relieve a purchaser from the burden of showing that the proceedings anterior and necessary to the *power* to make the sale actually took place.

"But the act of 1863 declares that the commissioner's certificate shall be *prima facie* evidence, not merely of the *regularity* of the sale, but also of its *validity* and of the *title* of the purchaser; and it enacts that it shall only be affected as evidence of the regularity and *validity* of the sale by establishing the fact that the property was not subject to taxes, or that the taxes had been paid previously to the sale, or that property had been redeemed. How can a deed be *prima facie* evidence of the *validity* of a sale unless it be such evidence of the transmission of the title of the property? Is any sale *valid* which does not pass the title to the subject of the sale? It may be regular in form and in the mode of its conduct, but it can not be *valid*, unless authorized by law. Now the act of Congress makes a certificate of sale by the commissioners evidence that the title acquired by the purchaser under the sale is a valid one, assailable only by proof of one or the other of three things."

The court then said that it was "not unmindful of the numerous decisions of State courts, which have construed away the plain meaning of the statutes providing for the collection of taxes," and concluded thus:

" To meet this tendency of judicial refinement very many States have of late adopted very rigid legislation. The acts of Congress we are considering must have had it in view. Hence the stringent provisions they contain. They declare, in effect, that the certificate of the commissioners' sale shall be evidence of compliance with the preliminary requisites of the sale, and that this evidence shall be rebutted only by proof of one or the other of three specified things. *There is no possible excuse for not enforcing such statutes according to their letter and spirit.*"

In favor of like construction and enforcement of similar statutes, the court in its opinion cited with favor the following cases, viz.: Gwynne vs. Neiswanger, 18 Ohio, 400; Allen vs. Armstrong, 16 Iowa, 508; Tharp vs. Hart, 2 Sneed (Tenn.), 509.

The principles therein announced were reannounced and affirmed in Keely vs. Sanders, 99 U. S. 441, and Sherry vs. McKinley, 99 U. S. 496.

The doctrine of these three decisions of the Supreme Court affirms the principles announced in the Lake [40 An. 142] and Douglass [41 An. 765] cases, and more fully confirms our conclusions as to the validity of the title tendered by the plaintiff.

The sale of the property in controversy was made in strict conformity with the provisions of Act 82 of 1884, and we must, therefore, align our opinion with the views entertained by us in the Lake and Douglass cases, and uphold the validity of the adjudication to plaintiff's author and compel the defendant to accept and complete the title tendered him.

Judgment affirmed.