## STERLING ALUMINUM PRODUCTS, Inc., v. SHELL OIL CO.

### No. 12694.

Circuit Court of Appeals, Eighth Circuit.

Feb. 21, 1944.

Rehearing Denied March 27, 1944.

See also D.C., 48 F.Supp. 540.

Wayne C. Smith, Jr., of St. Louis, Mo., for appellant.

John S. Marsalek, of St. Louis, Mo. (W. E. Moser and Moser, Marsalek & Dearing, all of St. Louis, Mo., on the brief), for appellee.

Before THOMAS and JOHNSEN, Circuit Judges, and MOORE, District Judge.

JOHNSEN, Circuit Judge.

The action is one under Missouri law[1] for breach of warranty in the sale of a fluid manufactured by defendant and purchased by plaintiff for use in testing automobile motor blocks for cracks, by the application of air pressure to the sealed, fluid-filled block.

Plaintiff alleged that defendant had surveyed its testing operations and, after being informed that plaintiff desired a penetrative fluid that was non-corrosive, non-inflammable and non-explosive, had recommended and warranted its "Shell Solvent Code No. 8195" as being fit for these purposes under the conditions of plaintiff's use. The recovery sought was for special damages occasioned by the fact that the clothing of one of plaintiff's employees had caught fire and burned him to

---

[1] Missouri has not enacted the Uniform Sales Act.

death, when a freeze plug blew out of a fluid-filled motor block and shattered an electric light globe, and that plaintiff had been required to satisfy a statutory liability of $4,000, under the Missouri Workmen's Compensation Law, Mo. R.S.A. § 3689 et seq., to the employee's dependent.

The case was tried to a jury, which returned a verdict for the defendant.

Plaintiff seeks a reversal here on an instruction given by the trial court responsive to a special paragraph in defendant's answer. The answer alleged, in addition to denying that defendant ever had warranted the fluid as being suitable for motor-block testing and that it even knew that plaintiff was using it for this purpose, that plaintiff further was not entitled to recover because "whatever damages plaintiff may have sustained were caused by plaintiff's own negligence and carelessness directly contributing thereto." As explained in its brief, defendant's point was that the fluid was patently a petroleum product and that plaintiff therefore "knew or should have known the solvent was not a proper substance for motor block testing."

Defendant had offered evidence that a use of the fluid under pressure was conducive to atomization and hence to increased inflammability and explosiveness. It further showed that at the inquest plaintiff's superintendent had testified[2] that he knew that the fluid had a normal flash point of 450 degrees, at which temperature it would "catch on fire"; that the use of air pressure would probably cause it to ignite "more quickly"; and that "we [had] taken some out in the yard in '36 before we started using it and threw some matches in it to see if it would go up." On the trial, the superintendent had testified in effect that plaintiff had adopted the use of the fluid for motor-block testing purposes wholly in reliance upon the recommendation and warranty of defendant. On cross-examination at the trial, he had stated that prior to the time of the accident he knew nothing about what a flash point was or that the use of air pressure tended to vaporize the fluid and to increase its combustibility, but that he left the matter entirely to defendant "to tell me which was which and what was

what." His inquest testimony also showed that, while he on that occasion admitted knowing that the fluid had a flash point of 450 degrees and that it might ignite more quickly if used under air pressure, he had further stated that "we had the word of Shell (defendant) it was non-inflammable to a certain extent to the job we were going to use it"; that at the time of the accident the fluid had ignited "in ordinary room temperature of about 70 degrees or whatever the temperature was that night, the building was wide open"; and that, under the conditions in which it was being used, "it should not ignite."

The instruction complained of was as follows: "The defendant interposes another defense, which is that irrespective of the question of warranty, whether there was or was not a warranty, that the substance was of such a nature that the plaintiff's superintendent either did know or should in exercising reasonable and ordinary care have known that the product was unsuitable for use for motor-block testing purposes. On that point you are instructed that * * * if you find from the greater weight of the evidence that the substance was of such nature that the plaintiff's superintendent actually knew or in the exercise of ordinary or reasonable care should have known that it was not suitable for use for motor-block testing purposes, then your verdict shall be for the defendant. That of course is because in such event the plaintiff would have been negligent in using the substance for that purpose if it knew or should have known it was not a proper substance for that purpose."

In a technical sense, the issue presented by the instruction was, of course, not one that was legally disassociable from "whether there was or was not a warranty", as the trial court stated, but this inadvertence alone could hardly practicably be assumed to be such a matter as would mislead the jury. Necessarily, as another portion of the charge had correctly suggested, if the jury believed that there was no warranty, that would end the lawsuit. On the other hand, if the jury found that there was a warranty,[3] defendant's position that the

---

[2] The record is not clear whether the transcript of the superintendent's testimony at the inquest was in fact read to the jury. It has been discussed in appellee's brief without any challenge on the part of appellant, as being part of the evidence, and we are therefore referring to it here to show the full situation.

[3] The court's instructions had left the jury free to find that there was either an express or an implied warranty, and for purposes of this appeal the challenged in-

fluid was not suitable for pressure testing, and that plaintiff knew or should have known that fact, left four questions remaining under the law of warranty:[4] (1) Whether the warranty actually had been relied on; (2) whether the situation was one that legally justified such a reliance; (3) whether, in relation to the questions of reliance and right to rely, there had been a breach; and (4) whether the damages sought were the natural and proximate consequences of the breach and such as reasonably could be said to have been within the contemplation or "foreseeability"[5] of the parties.

These separate, basic elements under the law of warranty were nowhere expressly stated to the jury. The reference in the challenged instruction to whether "the substance was of such nature that the plaintiff's superintendent actually knew or in the exercise of ordinary or reasonable care should have known that it was not suitable for use for motor-block testing purposes" would seem to have been impliedly directed to the matter of reliance and the right to rely, but the subsequent statement that this "is because in such event the plaintiff would have been negligent in using the substance for that purpose" is an apparent confusion of the entire situation into the question of the foreseeability of the special damages involved.[6] But, on the evidence, the crucial questions in the case, if the jury found there was a warranty, were whether plaintiff had relied on it and whether it had a right to do so, since the

controversy at the trial was focused on whether plaintiff knew or ought to have known of the unsuitability of the fluid for pressure-testing use, and there was no contention that any other act of plaintiff or its employees had been a proximate factor in causing the accident or that the amount paid under the Workmen's Compensation Law was not the proper measure of plaintiff's loss,[7] if such damages were legally recoverable.

■ We shall not, however, consider the general confusion of the instruction further, for plaintiff's attack is directed more specifically to the point that the instruction did not furnish a correct or intelligible standard, in relation· to the law of warranty, for determining whether plaintiff had a right to rely on the warranty, if one existed and there had in fact been a reliance. The effect of the contention made is that the court's hypothesis, whether plaintiff "in the exercise of ordinary or reasonable care should have known that it (the fluid) was not suitable for use for motor-block testing purposes", left the jury free to find that plaintiff should have made further inquiries and tests and allowed it to measure plaintiff's duty by unqualified tort standards, without requiring it to take into account the extent of a buyer's right in the field of warranty to rely on the seller's skill and judgment, or to give consideration to the varying extent of the obligation to inspect in relation to whether the warranty was express or implied.[8] We think the point is well taken. Without any

struction must therefore be considered in relation to both forms of warranty.

[4] See Williston on Sales, Second Edition, §§ 206, 208, 235, 599(a), 599(b), 599(c), 614.

[5] Restatement, Contracts, § 330.

[6] Appellee's brief cites authorities to the effect that "where it is sought to recover for consequential damages on a breach of warranty the plaintiff himself must be without fault" (Saxony Mills v. Huck, Mo. App., 208 S.W. 868, 870); that where a plaintiff "seeks to recover consequential damages, he should not be permitted to recover for his own negligence" (Razey v. J. B. Colt Co., 106 App.Div. 103, 94 N.Y.S. 59, 61); and that a plaintiff can not recover in breach of warranty "for any damages of which his own negligence was the proximate cause" (Wright v. Computing Scale Co., 47 Wash. 107, 91 P. 571, 573). These statements relate to the question of the foreseeability of special damages in which a breach of warranty is not the sole

proximate factor in the loss. They are of no particular assistance in applying the challenged instruction as a guiding principle to the evidentiary situation in this case.

[7] In London Guarantee & Accident Co. v. Strait Scale Co., 322 Mo. 502, 15 S.W. 2d 766, 769, 64 A.L.R. 936, it was held that the amount of an employer's legal liability for injuries to an employee, proximately resulting from a breach of warranty, were properly recoverable as consequential damages in an action against the seller for breach.

[8] There is no occasion for us here to discuss what the difference is in the obligation ·to inspect under an express and under an implied warranty. See generally Williston on Sales, Second Edition, §§ 208, 234; 24 R.C.L., Sales, §§ 446, 459; London Guarantee & Accident Co. v. Strait Scale Co., 322 Mo. 502, 15 S.W.2d 766, 64 A.L.R. 936; Busch & Latta Paint Co. v. Woermann Construction Co., 310 Mo. 419, 276 S.W. 614; Moore v. Miller, Mo.App.,

804

indication of the nature of a buyer's right in the law of warranty to rely on an express. contractual undertaking or on the seller's skill and judgment generally, and of the varying extent of the buyer's duty to inspect in relation to whether the warranty was express or implied, the jury here was left free to apply unqualified ordinary-care standards, without any counterbalancing consideration of the seller's contractual obligation. The instruction was one which in our opinion would mislead, instead of properly guiding the jury.

But, while this error normally would be one that would entitle plaintiff to a reversal, we are compelled to affirm the judgment, because defendant was in any event entitled to a directed verdict. Plaintiff is seeking to recover damages predicated on the death of its employee. Under Missouri law, damages for death are not recoverable as a breach of contract, but only as a tort.[9] The Supreme Court of Missouri has specifically so ruled in Bloss v. Dr. C. R. Woodson Sanitarium Co., 319 Mo. 1061, 5 S.W.2d 367, 368. In that case, where the death was alleged to have been occasioned by a breach of contract and a demurrer had been sustained to the petition, the court, in affirming the judgment for defendant, stated that "the doctrine in this state always has been that the wrongful death statutes confer a cause of action ex delicto, not one ex contractu." However unfortunate this statutory construction may seem,[10] we have no power to change it or right to ignore it.

Plaintiff seeks to escape the effect of the Bloss case by arguing that its damages are not for the employee's death but for the loss sustained in satisfying its Workmen's Compensation Law liability. But the Workmen's Compensation Law merely fixed the scope and measure of plaintiff's liability for its employee's death. Plaintiff's liability was for the death, and the damages sought to be recovered here are

therefore clearly predicated on the death and have been occasioned by it. In this connection, it should be noted that the Missouri Workmen's Compensation Law does not grant any right of recoupment to an employer against a third party, for compensation payments made on account of an employee's death, except under the provisions of the general death statutes,[11] and the Bloss case clearly settles that these statutes do not permit the assertion of damages for death as a breach of contract.

Plaintiff points out that in London Guarantee & Accident Co. v. Strait Scale Co., 322 Mo. 502, 15 S.W.2d 766, 64 A.L.R. 936, the court, without any reference to the Bloss case, recognized the right of an employer to recover damages in breach of warranty for the death of an employee. But that case, while instituted in the Missouri courts, involved a warranty which was intended by the parties to be operative in Minnesota, and the death occurred in that State. Under Minnesota law, damages for death are recoverable as a breach of contract.[12] There appears to have been no contention made that the Bloss case was in any way applicable to the situation, and there is no language in the opinion that indicates any intention to depart from the construction of the death statutes made in the Bloss case as a matter of Missouri law.

The present situation then is one where the trial court should have sustained defendant's motion for a directed verdict and entered judgment in its favor as a matter of law. To reverse the judgment for the error pointed out in the trial proceedings and to remand the cause with directions to enter another judgment for defendant would be purposeless formality,[13] since no question of possible res judicata in other matters between the parties, from the findings of the jury on the issues tried, is claimed to be involved.

The judgment accordingly is affirmed.

100 S.W.2d 331. Compare also section 15 of the Uniform Sales Act.

[9] Cf. 16 Am.Jur., Death, §§ 60, 73.

[10] Cf. Dayton Power & Light Co. v. Westinghouse Electric & Mfg. Co., 6 Cir., 287 F. 439, 37 A.L.R. 849.

[11] Mo.R.S.A. §§ 3652, 3653.

[12] See Keiper v. Anderson, 138 Minn. 392, 165 N.W. 237, L.R.A.1918C, 299.

[13] Cf. Erwin v. Lowry, 48 U.S. 172, 7 How. 172, 12 L.Ed. 655; Indiana Farmer's Guide Pub. Co. v. Prairie Farmer Pub. Co., 293 U.S. 268, 55 S.Ct. 182, 79 L.Ed. 356; McCluer v. Heim-Overly Realty Co., 8 Cir., 71 F.2d 100; McGivern v. Northern Pac. Ry. Co., 8 Cir., 132 F.2d 213; Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.