## JOHNSON, TRUSTEE IN BANKRUPTCY OF WARREN CONSTRUCTION COMPANY, *v.* ROOT MANUFACTURING COMPANY.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 308. Argued April 18, 1916.—Decided May 1, 1916.

An agreement was made by way of compromise more than four months before the petition was filed to pay from a fund of which the bankrupt was entitled to the residue all lienable claims, including claims of one who had waived the right to file liens, but had subsequently filed claiming the right so to do owing to failure of bankrupt to fulfil contract, and to whom payments were made from the fund within four months of the filing of the petition which the trustee brought suit to recover as preferential. *Held* that the earlier agreement created an equitable lien in favor of all parties thereto having color of right, and the payments thereunder did not become preferential because the amounts were not ascertained and liquidated until within the four-month period.

219 Fed. Rep. 397, affirmed.

THE facts, which involve the right of a trustee in bankruptcy to recover an alleged preferential payment made by the bankrupt within four months of the filing of the petition under an agreement made more than four months before the filing, are stated in the opinion.

*Mr. W. H. Thompson,* with whom *Mr. W. H. H. Miller, Mr. C. C. Shirley, Mr. S. D. Miller, Mr. Fred H. Atwood, Mr. Frank B. Pease, Mr. Charles O. Loucks* and *Mr. Vernon R. Loucks* were on the brief, for plaintiff in error:

The action was to cover an alleged unlawful preference. The judgment of the District Court did not depend upon diverse citizenship alone.

The defendant in error waived its lien. The right to file a lien may be waived before lien accrues. No equitable lien was created by agreement of January 12, 1912. There was no equitable lien in this case.

Preferences in ordinary course of trade are voidable. Accounts receivable may be disposed of in violation of the Bankruptcy Act. The payment was made out of bankrupt's funds.

Numerous authorities, state and Federal, support these contentions.

*Mr. Frank S. Roby* and *Mr. Elias D. Salsbury* for defendant in error submitted:

The payment was not preferential; the agreement of January 12, 1912, was more than four months prior to the petition and created liens and was otherwise legal.

In support of these contentions see *Albrecht* v. *Foster Lumber Co.,* 126 Indiana, 318; *Brzezinski* v. *Neeves,* 93 Wisconsin, 567; 67 N. W. Rep. 1125; *Carson-Payson Co.* v. *C., C., C. & St. L. Ry. Co.* (Ind. App. Ct.), 105 N. E. Rep. 503; *Closson* v. *Billman,* 161 Indiana, 610; *Cushing* v. *Hurley,* 112 Minnesota, 83; 127 N. W. Rep. 441; *Continental & Commercial Tr. & Sav. Bank* v. *Chicago Title & Tr. Co.,* 229 U. S. 435; *Coder* v. *Arts,* 213 U. S. 223, 229; *In re Dismal Swamp Contr. Co.,* 135 Fed. Rep. 415; *Early* v. *Atchison &c. Co.,* 167 Mo. App. 252; 149 S. W. Rep. 1170; *In re Ft. Wayne Electric Corp.,* 99 Fed. Rep. 400; *Globe Bank & Tr. Co.* v. *Martin,* 236 U. S. 288; *Grant* v.

*Strong,* 18 Wall. 624; *Greey* v. *Dockendorff,* 231 U. S. 513; *In re Great Western Mfg. Co.,* 152 Fed. Rep. 123, 127, 128; *Hewitt* v. *Berlin Machine Works,* 194 U. S. 296; *Johnson* v. *Hanley,* 188 Fed. Rep. 752; *Kelly* v. *Johnson,* 251 Illinois, 135; 95 N. E. Rep. 1068; 36 L. R. A. (N. S.) 573, 577; *Kertscher* v. *Green,* 205 N. Y. 522; 99 N. E. Rep. 146; *Ketcham* v. *St. Louis,* 101 U. S. 306, 315; *Knapp* v. *Milwaukee Tr. Co.,* 216 U. S. 545; *Long* v. *Caffrey,* 93 Pa. St. 526; *Long* v. *Farmers State Bank,* 147 Fed. Rep. 360; 9 L. R. A. (N. S.) 585; *Ludowici Roofing Tile Co.* v. *Pa. Inst. &c.,* 116 Fed. Rep. 661, 662; *McCabe* v. *Rapid Transit Co.,* 127 Fed. Rep. 465; *McDonald* v. *Daskam,* 116 Fed. Rep. 276; *McHenry* v. *Knickerbacker,* 128 Indiana, 77.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit to recover an alleged preference from the defendant in error. The Circuit Court of Appeals reversed a judgment recovered by the plaintiff and ordered judgment for the defendant. 219 Fed. Rep. 397; 135 C. C. A. 139. This writ of error was taken out before the passage of the Act of January 28, 1915, c. 22, § 4, 38 Stat. 803, 804.

The facts are these: On May 9, 1910, the Warren Construction Company, the bankrupt, had contracted to do some construction for a railroad company, receiving monthly payments on account, and agreeing that if at any time there should be evidence of any lien for which the railroad might become liable and which was chargeable to the Warren Company the railroad might retain an amount sufficient to indemnify it. Should there prove to be such a claim after the payments were made the Warren Company agreed to refund all moneys the railroad might be compelled to pay in discharging any lien made obligatory in consequence of the Warren Company's default. The Warren Company gave a bond with sureties for the performance of this contract. Later it made a

written subcontract with the Root Manufacturing Company for materials, in which the Root Company in the fullest terms renounced all lien on its own behalf and contracted that all under it should do the same. Monthly payments were to be made on account and final payment within forty days after the contract was "fulfilled."

In 1911 the Root Company notified the railroad that it was not being paid and that it would not furnish more material unless the railroad would see that it was paid. The railroad gave the assurance and the Root Company continued to furnish the materials called for by its contract. Seemingly the payments continued to be unsatisfactory and on November 18, 1911, after the Root Company had performed its contract there was unpaid $12,895.34. On November 25, 1911, the Root Company filed statutory notices of its intention to hold a lien upon the railroad's property for the amount then due. On January 12, 1912, after conferences of all parties concerned, a contract was made between the railroad, the Warren Company and its sureties, reciting controversy as to whether the Warren Company's contract had been performed, the filing of claims for liens and attachment suits for more than the sum admitted by the railroad to be due, and the railroad's assertion of its right against the surety companies. This contract fixed $42,000 as a sum to be paid by the railroad in full settlement of the mutual claims between it and the Warren Company, and provided that with $20,000 to be furnished by the surety companies the sum should be put into the hands of named trustees 'to be used in paying all lienable claims' growing out of the construction contract. If the fund was not sufficient to pay lienable claims in full, the surety companies were to furnish the additional money necessary. After all lienable claims were paid, the balance, if any, of the fund was to be paid first to reimburse the surety companies for their contribution

and after that to the Warren Company, subject to such attachments as might be filed against the sum.

On April 10, 1912, a written contract was made between the railroad, the sureties, the Warren Company and the Root Company, which recited the claim of the Root Company and that the railroad had money in its hands held back under its contract with the Warren Company for the purpose of protecting the road against liens, and agreed that $6,447.67 should be paid to the Root Company by way of compromise, that the Root Company should assign its claim to the trustee under the former instrument, surrendering to the Warren Company notes for sixty per cent. of its claim, and that the trustee should reassign to the Root Company the unpaid portion of its claim when attachments against the fund had been disposed of. The payment was made the same day and the Root Company executed a release as agreed. The sum was a larger percentage than will be received by the unsecured creditors of the Warren Company but a smaller one than that received by any other subcontractors with a lien. The petition in bankruptcy was filed on July 18, 1912, and the above payment was a preference if it stood as a payment to an unsecured creditor in the circumstances on the date when it was made.

The Circuit Court of Appeals held that the instrument of January 12 created an equitable lien that justified the payment, although it was of opinion that the lien asserted by the Root Company could not have been enforced. The plaintiff in error contends that the provision in favor of 'lienable claims' was confined to those that were secured by a valid lien. We express no opinion as to whether the lien of the Root Company asserted against the property of the railroad could have been defeated by its contract with the Warren Company notwithstanding the Warren Company's default. It is enough that we agree with the ultimate view of the Circuit Court of

Appeals. The agreement of January 12 was intended for practical purposes, to clear the railroad property from claims. It contemplated possible controversies as it provided for costs, but it did not require that every disputed lien should be fought out to the end. It was understood by the parties to extend to the compromise of claims that stood upon debatable ground, as was shown by the agreement under which the payment was made. It set aside a specific fund in a third hand to that end. All the parties acted in good faith. The $42,000 credited to the Warren Company as retained by the railroad was nearly twice what the railroad admitted to be due, apart from the compromise by which it secured the application of that sum to clearing its land. We are of opinion that there is no reasonable doubt that all parties were justified in the course adopted, that the instrument of January 12 created an equitable lien in favor of all alleged liens which the parties should deem to have color of right, and that the fund being thus appropriated and set aside it does not matter that the formal ascertainment of the specific beneficiary was made within four months of the bankruptcy proceedings. It was well understood before. The Root Company took part in the preliminary discussions and there can be no doubt that it was expected by all on January 12 that its claim, however disputed, would have to be dealt with when the fund came to be paid out.

*Decree affirmed.*