BROWNE *v.* UNION PACIFIC RAILROAD COMPANY.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 194.  Argued January 19, 1925.—Decided March 2, 1925.

A purchaser of interstate shipments of grain sued the carrier for damages alleged to have resulted from the falsity of dates of original shipment as recited in substituted order bills of lading issued by the carrier's agent, and the state court sustained the carrier's defenses, partly upon the ground that such bills of lading were not strictly negotiable under the Federal Bill of Lading Act, as contended by the plaintiff, and partly upon other and nonfederal grounds. *Held* that, as the latter grounds were substantial and broad enough to sustain the judgment, the judgment should be affirmed without considering the federal question.

113 Kans. 726, affirmed.

CERTIORARI to a judgment of the Supreme Court of Kansas which sustained a judgment for the Railroad Company in an action by Browne for damages alleged

to have resulted from false recitals of dates in substituted bills of lading.   See 113 Kansas, 726.

*Mr. Ray Campbell,* with whom *Mr. J. Graham Campbell* was on the briefs, for petitioner.

*Mr. Nelson H. Loomis,* with whom *Mr. T. M. Lillard.* and *Mr. C. B. Matthai* were on the brief, for respondent.

*Mr. Luther M. Walter,* by leave of Court, filed a brief as *amicus curiae.*

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

This action was begun in the District Court, Shawnee County, Kansas, to recover damages resulting from false recitals of dates contained in substituted order bills of lading for four cars of wheat.   These bills were issued by respondent's agent at Denver and stated, contrary to the facts, that they were given in lieu of others issued at points of origin on specified dates *prior to November 9, 1920.*

Petitioner agreed to buy a quantity of wheat from the Ed Past Grain Company, of Denver, at a stipulated price, shipments to be made before November ninth, and then contracted to resell at a favorable price contingent upon like shipments.   He alleged that, relying on the false recitals in the substituted bills, he paid drafts drawn on himself by the Past Company for the purchase price, but was unable to use the wheat, when received, to fulfill his contract of resale because original shipments were too late, and that he was compelled to dispose of it on a declining market at considerable loss.   Also, " That according to the usage and custom of the grain business, well known to defendant  .  .  .  .   time of shipment of grain in car lots is determined by the date appearing on the bills of lading on which the carrier received such car of grain for transportation and grain on contract is delivered by tendering

a properly endorsed order bill of lading attached to the seller's draft on the buyer for the estimated price of such car of grain, such order bill of lading being delivered to the buyer upon payment of such draft."

Answering, respondent denied every allegation of the petition not specifically admitted. It acknowledged purchase of the wheat by petitioner from the Past Company, but alleged that, having failed to cancel the contract because of delay, as permitted, he was bound to accept the wheat on arrival; also, that it had no notice of the contract for resale and was not liable for any special damages consequent upon failure to comply therewith. It further stated that the substituted bills were prepared by the Past Company and the signature of its Denver agent obtained by fraud; that the agent had no authority to sign bills containing false or erroneous statements; that petitioner could have disposed of the wheat without loss if he had acted promptly and prudently upon receipt of the same. And (Paragraph 5), " Defendant denies specifically that plaintiff used every effort to ascertain the dates said shipments were made, and this defendant alleges that the freight bills which plaintiff alleges were paid by him, show fully the points where different parts of said shipments originated in less than carload lots, and show the transit point where the same were consolidated into the four carload shipments involved in this action; that had plaintiff awaited the arrival of said shipments at McKinney, Texas, before paying the drafts attached to the bills of lading he could, by inquiring of the delivering carrier, have ascertained all of the facts relative to the dates and points of origin of said shipments, and defendant alleges this information was equally available to him at any time thereafter. Defendant further alleges that by reason of the lateness of the delivery of said shipments, plaintiff was, or should have been warned, of the probability of the fraud of the Ed Past Grain Company, and should have

42684°—25——17

detected the same prior to the payment of the drafts and acceptance of the wheat, as did The Gladney Milling Company when the wheat was thereafter tendered to them for application on the contract between them and the plaintiff."

A general demurrer to the answer and special demurrers to certain paragraphs were interposed and overruled by the court. Judgment went against petitioner. He stood on the demurrer and perfected an appeal to the Supreme Court, which affirmed the challenged judgment. In the latter court his principal contention seems to have been that the Federal Bill of Lading Act, approved August 29, 1916, c. 415, 39 Stat. 538, makes order bills of lading strictly negotiable and therefore respondent became liable to him for the damages consequent upon misstatements of dates in the substituted bills. This contention was duly considered and rejected. The court then said—

" It follows that insofar as plaintiff's demurrer involved the question chiefly urged here, the ruling of the trial court was correct. The other matters pleaded in defendant's answer, to which the plaintiff objected and demurred, need but brief attention. The fact, if correct, that plaintiff was bound to accept the shipments from the Ed Past Grain Company, may not be a complete defense to plaintiff's cause of action, but it does raise an issue which may become important on the measure of damages if any are recoverable in the action. And whether there was a custom of grain dealers to rely on the datings of bills of lading, of which the carrier had notice or was bound to take notice, was also a question of fact, and therefore not demurrable. The scope of the powers of defendant's agent at Denver could not be determined by demurrer; and neither could the matters pleaded in the fifth paragraph of the answer summarized above."

" It is well settled that where the Supreme Court of a State decides a Federal question in rendering a judgment,

and also decides against the plaintiff in error upon an independent ground not involving a Federal question and broad enough to maintain the judgment, the writ of error will be dismissed without considering the Federal question." *Hammond* v. *Johnston,* 142 U. S. 73, 78; *Enterprise Irrigation District* v. *Canal Company,* 243 U. S. 157, 164.

It seems clear that the Supreme Court of Kansas rested its judgment, affirming the action of the trial court, upon a non-federal ground broad enough to sustain it. The answer not only relied upon non-negotiable features of the bills—the federal question—but advanced other defenses good as against the general demurrer. It denied the existence of any trade usage to accept as accurate recitals as to dates in bills of lading, also that the Denver agent had power to issue the substituted bills. It asserted that petitioner was obligated to accept the grain irrespective of the dates of original shipments, and that if due diligence had been exercised no loss would have occurred. These denials and assertions raised questions under the state laws. They were substantial and broad enough to sustain the ruling of the trial court.

The judgment below is affirmed.

*Affirmed.*