## McCLUER v. HEIM–OVERLY REALTY CO.
### No. 9883.

Circuit Court of Appeals, Eighth Circuit.
April 18, 1934.

. A. J. Granoff, of Kansas City, Mo., for appellant.

Mord M. Bogie and W. H. H. Piatt, both of Kansas City, Mo. (Henry L. Jost, of Kansas City, Mo., on the brief), for appellee.

Before STONE and WOODROUGH, Circuit Judges.

STONE, Circuit Judge.

The W. C. Mullins Construction Company was adjudicated a bankrupt, January 20, 1928, on an involuntary petition, filed the day before. The trustee brought this suit against appellee to recover $54,177.50, with interest from November 9, 1927, claiming that the collection of that amount on the above date by appellee constituted an unlawful preference. Jury was waived, the court made findings of fact and stated conclusions of law upon which a judgment was entered for appellee. From that judgment this appeal.

This litigation has been strenuously contested on both sides. One result of this is the presentation here, by appellant, of a number of separately stated and argued issues. All of these may well be covered by two general points.

■ I. The first of these is that the grounds upon which the court found for appellee depended upon issues not presented as such in the pleadings. Since this case comes up on the entire record, including a bill of exceptions containing all of the evidence, it is a matter of no controlling concern whether the reasoning of the court, although embodied in findings and conclusions, is correct or not, if the right result is reached. So far as the pleadings are concerned, we need notice only whether the issues raised thereby are such as to justify the resulting judgment, when viewed in connection with the evidence to support such issues. While it is necessary to an understanding of the issues presented by the pleadings to state some matters rather fully, it is enough in connection with this point to say that the main issue presented by the pleadings was whether a certain assignment operated as a valid lien giving appellee a right to the above money superior to that of the trustee.

II. While presented from many viewpoints and as many issues, the real controversy here is whether the evidence is sufficient to sustain the existence of the lien contended for. There is little dispute as to much of the evidence and as to the disputed points there is ample evidence to sustain the view of the trial court thereon, as represented in the findings of fact. The lien here relied upon is based upon an assignment of February 10, 1927, which will be set out, hereinafter, in chronological order. The proof and the pleading as to this lien so closely correspond that it is unnecessary to make separate statement as to the pleading and as to the proof. The situation pleaded and shown is as follows: W. C. Mullins was president and active officer of the bankrupt in the matters hereinafter related, just as Joseph Overly was secretary and treasurer and actively representing appellee in the same transactions. In July, 1925, the bankrupt was preparing to make two bids to the city of Kansas City, Mo., for the construction of two separate portions of a city sewer. It was required that every bidder should file with his bid a certified check for $15,000, which was subject to forfeiture if the bidder should receive and fail to make the contract covered by the bid. Mullins secured from Overly that loan of this $30,000. The Mullins' bids were accepted for respective contract prices of $293,525.90 and $240,804.81. The bidder was required to furnish a surety bond, securing performance of each contract, in the amount of 50 per cent. of the contract price. In this situation Mullins represented to Overly that he was unable to make the bonds and would also need $40,000 to provide sufficient funds for the work during the progress of the contracts, and that if appellee would arrange for a sufficient indemnity to induce a qualified surety company to execute the required bonds and arrange to advance the bankrupt the above $40,000, that it would give appellee a sum equal to 50 per cent. of the profit on the contracts. Faced with the possible loss of the $30,000 already advanced, appellee complied with this request by indemnifying the surety company which made the bonds and by agreeing to advance the $40,000. Shortly after, Mullins advised Overly that the bankrupt desired to change the above arrangement so that in lieu of the 50 per cent. of the profits from the contracts it would pay appellee $25,000— one-half in six months and one-half upon completion of the contracts. This change in this part of the prior verbal contract was put into a written contract, of August 22, 1925, between the bankrupt and appellee. This contract is as follows:

"This Agreement, entered into at Kansas City, Missouri, this 22d day of August, 1925, by and between W. C. Mullins Construction Company, a Missouri corporation (hereinafter called first party) and Heim & Overly Realty Company, a Missouri corporation (hereinafter called second party) witnesseth:

"Recitals: First party has entered into a contract with Kansas City, Missouri, to construct certain public sewers for said municipality known as Sections 'D' and 'E' of the Blue River Sewer, in which said contract second party now has a one-half interest in the contract price thereof to be paid by said City for the doing of said work, which said interest arises and accrues to second party because of an existing agreement between first and second parties, under which said second party agreed to furnish all of the necessary funds for the building of said sewer and to furnish indemnity to the surety company in order to procure the necessary bond guaranteeing the performance of said contract.

"Agreements: Now, in consideration of the sum of Twenty-five Thousand Dollars ($25,000.00) to be paid by first party to sec-

ond party without interest, and which by these presents said first party agrees to pay to second party, one-half thereof to be paid six (6) months from the date of this contract, and the remaining half to be paid when said sewer shall have been completed and the above described contract fully performed, and in further consideration of second party's agreement hereby to furnish to said first party from time to time and during the progress of the work as and when needed therefor, funds not to exceed the sum of Forty Thousand Dollars ($40,000.00), which said funds, advancements and loans first party agrees and promises hereby to refund and to repay to second party at the completion of said work and contract, with eight per cent interest on such advancements and loans from the respective dates on which the same were made, second party does hereby relinquish and release to first party all of the present rights and interests of second party in and to the aforesaid existing contract between first party and said Kansas City, Missouri."

To protect appellee on account of the obligations of the above contracts, the bankrupt, at this time, executed an assignment to appellee of any and all sums of money to be derived by reason of the performance of the work under the contracts with the city.

Prior to executing the indemnity agreement upon which the construction contract bonds were secured, there was a verbal agreement between the parties that all money received by the bankrupt on the construction contracts should be deposited in a special account in a bank in which Overly was a director and official; that such funds should be kept separate and distinct from all other moneys of the bankrupt and used to pay bills on account of labor or materials going into the construction contracts, and to repay appellee for its advances, and for the $25,000 under the August contract. The arrangement as to deposit of moneys continued until full performance of the contracts with the city and payment of all but the final estimates. During this time, such funds were applied to the construction contracts with the exception of an unauthorized diversion by bankrupt of $13,000 from the special fund.

During the progress of the work it became necessary for the bankrupt to have additional funds which were advanced by appellee under the terms of the existing contracts between them. In this wise, at various times and in various amounts, appellee advanced $82,500, of which it was repaid, during the progress of the work, a total of $15,000.

The work upon the contracts was completed the latter part of 1926 and, on November 1, 1926, the bankrupt filed final estimates with the city on the two contracts totalling $287,177.85. These estimates were disputed by the city and during the progress of the negotiations with the city concerning them appellee deemed it advisable, for the purpose of protecting the large amount of money due it from the bankrupt, to file with the city the assignment of moneys executed August 22, 1925. When this assignment was sought at the bank where it had been left, it could not be found. Appellee then requested the bankrupt to execute a new assignment of all moneys due from the city to replace the lost assignment. This was willingly done and, on February 10, 1927, the bankrupt executed and delivered to appellee an assignment, as follows:

"W. C. Mullins Construction Co.
"202 New Nelson Building
"Kansas City, Missouri.

"Contractor of Public Works Sewer Building and Paving

"Phones Victor 5055
"Jackson 1923
"Feby. 10, 1927.

"Mr. M. S. Murray, City Hall, Kansas City, Missouri.

"Dear Sir: We hereby assign to the Heim Overly Realty Company the estimate due us for the construction of the Blue River Sewer.

"Yours truly,
"W. C. Mullins Construction Company,
"By [signed] W. C. Mullins, President."

The following day this assignment was filed with the proper city official, the obvious purpose of this assignment being to secure payment to appellee of its advances and the $25,000, all of which amounted, on February 10, 1927, to $94,062.17.

Thereafter, negotiations continued between the city, on one side, and the bankrupt and appellee, on the other, concerning the amount which should be paid upon the above final estimates, totalling more than $287,000. It becoming apparent that no settlement would be arrived at in this controversy, it was agreed by all of the parties thereto that a suit would be filed against the city in the name of the bankrupt for the sum of $205,326.29. About a month later (May 29, 1927), the city made an offer of settlement

to counsel representing the bankrupt and the appellee, which was the payment of $114,177.50 in full settlement of the two construction contracts. This offer was accepted and, on June 1, 1927, the city issued its warrant to the order of the bankrupt for $60,000, leaving a balance due of $54,177.50 —which is the amount involved in this action. When Overly went to the city hall on this date for the warrant, he found that Wayland (a vice president of the bankrupt) had secured delivery of it early that morning. At once, Overly notified the city officials that unless payment was stopped upon the warrant, appellee would hold the city liable under its assignment for any loss, whereupon payment was stopped. The next day (June 2, 1927) there was a conference between Overly and officers of the bankrupt (including Wayland) to work out the situation created by the delivery and stoppage of payment on the above warrant. At that conference it developed that the bankrupt had borrowed $10,000 to purchase materials used in the above construction contracts from a bank in which Wayland was interested and upon which there was $200 interest due. The result of this conference was that appellee agreed that this bank loan might be deducted from the $60,000 covered by the warrant, the balance to be paid appellee to apply on its obligations; also, that appellee would take care of all unpaid bills and obligations on the construction contracts (estimated at not more than $7,500) and would accept the balance due from the city in full satisfaction of the indebtedness due it from the bankrupt. In performance of this arrangement, appellee satisfied the unpaid bills which, in fact, amounted to more than $20,000.

In October, 1927, the suit brought against the city was disposed of by stipulation reciting that all claims of the bankrupt against the city were settled for the sum of $54,177.50 (which was the amount of the prior settlement less the $60,000 represented by the above warrant) and judgment thereon for that amount was duly entered. On November 9, 1927, the city drew its warrant in satisfaction thereof to the order of the bankrupt, delivering it to Overly, who presented it to Mullins, who indorsed it, when it was promptly cashed by appellee. Thereafter, satisfaction of the above judgment was made by the bankrupt.

Assignments of accounts may be made and constitute valid liens thereon (Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 691, and see Greey v. Dockendorff, 231

U. S. 513, 34 S. Ct. 166, 58 L. Ed. 339) if recognized by the law of the state (Benedict v. Ratner, 268 U. S. 353, 359, 45 S. Ct. 566, 69 L. Ed. 691). The state of Missouri recognizes and allows such assignment. Leahy v. Dugdale's Adm'r, 27 Mo. 437. Whether such an assignment has the effect of a lien so as to avoid the charge of being fraudulent or constituting a preference depends upon the extent of dominion over such accounts and over the proceeds therefrom permitted the assignor either by the instrument of assignment or by the conduct under the assignment permitted by the assignee. Benedict v. Ratner, 268 U. S. 353, 361–365, 45 S. Ct. 566, 69 L. Ed. 691. Here the dominion of the assignor was closely restricted to payments on the construction contracts and to retirement of the advances made by the assignee. There are now no creditors whose claims arose from these construction contracts. The assigned funds were kept in a separate special account in a bank where (because an officer of appellee was an officer in the bank) a close supervision could be exercised over that account. This arrangement was strictly adhered to except as to $13,000, which was improperly diverted by the bankrupt from this account without the consent of appellee. This restriction of dominion was sufficient to sustain the assignment as a lien upon these accounts. The situation here is quite different from that in the Benedict Case, supra, and in Blue v. Herkimer National Bank (C. C. A. 2) 30 F.(2d) 256 (much relied upon by appellant), where collections from the assigned accounts were placed in the general accounts of the assignors and they were permitted to use such funds freely for their own general purposes.

The assignment of February 10, 1927, is claimed to be insufficient for several reasons. The first is that the subject-matter was too indefinite, uncertain, and ambiguous to identify the property intended to be assigned. The supporting argument is that the term "estimate" precludes accuracy, being a mere approximation or rough calculation, sometimes formed from imperfect data, and that the subject-matter of an assignment must be definitely and accurately described. There is no force in this argument. However indefinite the word "estimate" may be in a dictionary sense, we are dealing with the matter here as applied to something specific. It is true that the amount of these final estimates was indefinite, in the sense that it was in dispute, but there was no lack of certainty that what was meant by assign-

ment of these estimates was that the bankrupt was assigning whatever sums might be ultimately determined to be due it on account of the two construction contracts. The second attack upon the sufficiency of the assignment is that there was no present consideration therefor. This contention loses sight of the facts surrounding the giving of this assignment. The record is clear that an assignment covering all of the moneys to be received by the bankrupt on the construction contracts had been executed before performance under the contracts was begun in consideration of certain advancements theretofore made and thereafter to be made by appellee. Except that this earlier assignment had been misplaced the assignment of February 10th would never have been executed nor needed. The sole purpose of the February 10th assignment was to replace the lost assignment. That its wording applied to the situation then existing is immaterial since it went no further than the original assignment. So far as consideration is concerned, it was no new instrument and is supported by all of the consideration back of the first assignment (Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 S. Ct. 239, 35 L. Ed. 1063; Fielder Lumber Co. v. Smith (Tex. Civ. App.) 151 S. W. 605; 38 C. J. 249 and notes 10–15; 17 R. C. L. 1171 § 4) and this consideration (at February 10, 1927) had matured to more than $90,000. A third assault upon the assignment is that even if it were valid, it was revocable and was revoked by the purported assignor bringing suit, with the knowledge of the appellee, against the city to recover the amounts due on the estimates. This contention is unsound for two reasons: First, the assignment was not revocable by the assignor, and, second, the action in bringing the above suit was in no sense a revocation. It was merely a method worked out to secure the determination of the amounts due on the estimates in a situation where the city, the bankrupt, and the appellee understood the relations of all the parties and none of them had any intention whatsoever of altering that relationship.

Since the lien created by the pledge of February 10, 1927, was genuine and sufficient and created more than four months before filing of the bankruptcy petition, the enforcement of that lien by collection of the $54,-177.50, within the four-month period did not operate as a voidable preference. Benedict v. Ratner, 268 U. S. 353, 359, 45 S. Ct. 566, 69 L. Ed. 691; Johnson v. Root Mfg. Co.,

241 U. S. 160, 36 S. Ct. 520, 60 L. Ed. 934; Sexton v. Kessler & Co., 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995.

Appellant attacks the admission in evidence of the verbal settlement agreement of June 2, 1927. There was no error here. This agreement really did not at all affect the validity or sufficiency of the assignment lien. It merely bore upon a change in the obligations of the parties as to some of the matters covered by the lien and upon the action of the parties in partial performances under the assignment.

The judgment should be and is affirmed.