**UNITED PARCEL SERVICE, INC., Plaintiff,**

v.

**WEBEN INDUSTRIES, et al., Defendants.**

**Civ. A. No. CA 3–83–0021–G.**

United States District Court, N.D. Texas, Dallas Division.

Jan. 24, 1985.

On Motion For Reconsideration March 13, 1985.

Melvyn L. Douglas, Clark, West, Keller, Butler & Ellis, Harold C. Abramson, Dallas, Tex., for plaintiff.

Mina A. Brees, Haynes & Boone, Dallas, Tex., for Weben Industries, Inc.

Vera R. Bangs, Michael Dorman, Liddell, Sapp, Zivley, Brown & LaBoone, Dallas, Tex., for Ken Thelen Co., Inc.

F. Dean Armstrong, Dallas, Tex., for Conveyor, Machinery & Steel Erectors, Inc.

William B. Finkelstein, Allan Brent Diamond, Hughes & Hill, Dallas, Tex., for Mercantile National Bank at Dallas.

**MEMORANDUM ORDER**

FISH, District Jud ;e.

*Introduction*

The remaining parties to this suit, Mercantile National Bank at Dallas and Mercantile Dallas Corporation (collectively "MNB") and Conveyor, Machinery and

Steel Erectors, Inc. ("CoMaster"), have filed cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The issues presented concern the priority rights of these adverse claimants to an interpleaded fund ("the contract fund") deposited by United Parcel Service, Inc. ("UPS") into the registry of this court in accordance with an agreed order approved by all interested parties on April 2, 1984. After consideration of the motions and the briefs, depositions, affidavits, and exhibits submitted in connection with each, the court has concluded that MNB's motion for summary judgment should be granted and CoMaster's should be denied.

### Legal Standard

A grant of summary judgment is appropriate only if it appears from the pleadings, depositions, admissions, and affidavits, construed in the light most favorable to the opposing party, that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. If the existence of a material fact is doubtful, summary judgment is inappropriate. *Dorden v. C.H. Heist Corp.*, 743 F.2d 1135, 1137 (5th Cir.1984).

### Undisputed Facts

Both parties agree that the following material facts of this case are not in dispute. Between December 6, 1977 and June 8, 1982 in Dallas, Texas, Weben Industries, Inc. ("Weben"), a Texas corporation with its principal place of business in Dallas, executed and delivered to MNB, a national banking association also based in Dallas, various promissory notes totalling $2,376,-861.00 in aggregate principal amount. MNB remains the owner and holder of all such promissory notes.

As collateral for the indebtedness represented by the promissory notes, Weben granted MNB a security interest in certain assets of Weben, consisting in part of Weben's "accounts, including accounts receivable, now owned or hereafter acquired and all products and proceeds thereof." On April 7, 1981 MNB validly perfected this security interest in the Weben assets, including Weben's accounts receivable, by recording with the Texas Secretary of State UCC–1 Financing Statements and UCC–3 Assignments of such Financing Statements previously filed by Republic Bank at Dallas from 1975–1980.

On April 26, 1982, UPS and Weben entered into a written contract for the construction and installation of a conveyor system for a UPS facility in Atlanta, Georgia. On May 10, 1982, Weben entered into a written subcontract with CoMaster whereby CoMaster agreed to assemble and install the conveyor system for UPS at the Atlanta facility. CoMaster first performed work for UPS on the Atlanta facility under CoMaster's contract with Weben on July 9, 1982.

On September 10, 1982, Weben filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Texas. At this point, CoMaster had engaged in substantial efforts toward construction of the Atlanta facility for which it had not yet received payment from Weben. At the same time, money was due Weben from UPS for labor and materials provided by various subcontractors for construction of the UPS facilities. On September 17, 1982, CoMaster recorded a materialmen's lien against the Atlanta property in accordance with Georgia Code Ann. § 67–2001 (now § 44–14–361) and § 67–2002 (now § 44–14–362) in the sum of $131,886.15, representing the amount Weben owed CoMaster on the Weben-CoMaster contract.

On January 7, 1983 UPS filed in this court its complaint in interpleader and subsequently deposited the sum of $1,190,-089.64 into the registry of this court for the benefit of UPS and all the defendant claimants. Of this sum, UPS allocated $358,-449.33 as the amount it owed Weben for work on the Atlanta facility. CoMaster seeks recovery of $131,886.15 from the contract fund, while MNB asserts a right to the entire contract fund.

*Legal Analysis*

In a diversity action such as this, a federal court must place itself in the position of a state court and reach that conclusion which it thinks the state court would reach. *DiPascal v. New York Life Insurance Company,* 749 F.2d 255, 260 (5th Cir.1985); *NCH Corporation v. Broyles,* 749 F.2d 247, 250 (5th Cir.1985). Both MNB and CoMaster submit that the substantive law of the state of Georgia controls their rights to the contract fund in this case.

In its motion for summary judgment, CoMaster argues that under principles of equity and the common law in Georgia, the portion of the contract fund representing amounts owed for materials and labor incorporated in the Atlanta facility is impressed with a constructive trust for the benefit of subcontractors such as CoMaster. Under this theory, the general contractor holds the funds as trustee only; consequently, the contract fund would not constitute an account receivable or any other kind of asset of Weben to which MNB's security interests in Weben's accounts could attach.

While there exists some support for a construction trust fund doctrine in the Georgia law cited by both parties, that support finds expression only in older cases decided before enactment of the Georgia Uniform Commercial Code. *See, e.g., Johnson v. Root Manufacturing Company,* 241 U.S. 160, 36 S.Ct. 520, 60 L.Ed. 934 (1916); *Cutler-Hammer, Inc. v. Wayne,* 101 F.2d 823, 825 (5th Cir.), *cert. denied,* 307 U.S. 635, 59 S.Ct. 1031, 83 L.Ed. 1517 (1939) (funds representing unpaid balance of construction contract price, deposited into bankruptcy court by owner to discharge lien claims, was deposited as money of the lien claimants, not as money of the estate); *Mullins v. Noland Company,* 406 F.Supp. 206, 213 (N.D.Ga.1975) ("the Georgia courts recognize a substantial obligation on the part of general contractors to ensure that all subcontractors and their materialmen are paid"); *Short & Paulk Supply Company v. Dykes,* 120 Ga.App. 639, 171 S.E.2d 782, 788 (1969) (in suit by subcontractors against owner to foreclose materialmen's liens, contractor was an interested witness because "[i]f he received the full contract price for the job he became a trustee of the funds for the purpose of disbursing them properly to those who held valid claims for labor and materials ..."); *Scott v. Williams,* 111 Ga.App. 735, 143 S.E.2d 16, 17 (1965) (in a suit by general contractor against owner to foreclose a materialmen's lien under Ga.Code Ann. § 67–2002, as contract price becomes due it "is charged with a lien as against the contractor, in favor of the subcontractors, materialmen, and laborers .... [T]he statute operates as a sort of automatic garnishment, which ... impounds the fund due by the owner ...").

The federal appellate cases holding that funds owed to subcontractors, materialmen, or laborers are subject to a "construction trust" dealt with state laws specifically creating statutory trust funds for the benefit of those individuals. *See, e.g., Selby v. Ford Motor Company,* 590 F.2d 642 (6th Cir.1979) (interpreting Michigan Builders Trust Fund Act); *Carrier Corporation v. J.E. Schecter Corporation,* 347 F.2d 153 (2d Cir.), *cert. denied,* 382 U.S. 904, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965) (interpreting New Jersey statutory law); *cf. Georgia Pacific Corporation v. Sigma Service Corporation,* 712 F.2d 962 (5th Cir.1983) (interpreting Arkansas and Mississippi lien statutes).

CoMaster admits, however, that Georgia, unlike these states, does not have a construction trust fund statute for the benefit of subcontractors. Furthermore, even if the above authorities might somehow be construed to authorize imposition of a constructive trust in favor of the mechanic's lien claimant here, they are nevertheless distinguishable on the ground that any "trust" imposed on contract funds in those cases was in favor of lien claimants as against *general* creditors of the bankrupt contractor or as against the general contractor himself. *See, e.g., Cutler-Hammer, Inc.,* 101 F.2d at 825; *Mullins,* 406

F.Supp. at 211; *Short & Paulk Supply Company,* 171 S.E.2d at 788; *Scott,* 143 S.E.2d at 17–18.

Here, by contrast, the rights of the lien claimant compete for priority with the rights of a *secured* creditor. Indeed, *Cutler-Hammer, Inc.,* upon which CoMaster relies so heavily, was decided prior to enactment of the Georgia Uniform Commercial Code which now governs the rights and priorities of secured creditors. Consequently, this court is of the opinion that a Georgia court would decline, absent express statutory authority, to impose a construction trust on the contract fund involved here.

Although CoMaster cannot rely on the special protection for subcontractors afforded by the construction fund doctrine, the court must still determine which party has the superior right to the contract fund. MNB argues that CoMaster does not have a valid lien on any portion of the contract fund under Georgia law for the reasons that: (1) CoMaster expressly waived any lien rights it may have had to UPS property; (2) CoMaster failed to perfect any possible lien as required by Georgia law; and (3) even if CoMaster has a valid lien, that lien attached only to real estate and not to the contract fund. These arguments need not be decided, however, because the court has concluded that even if CoMaster has a valid mechanic's lien, MNB's previously perfected security interest in Weben's accounts receivable takes priority over CoMaster's lien.

Georgia Code Annotated § 109A–9–310 (now § 11–9–310) provides in part that:

Except as is expressly provided to the contrary elsewhere in this Article, a perfected security interest in collateral takes priority over each and all of the liens, claims and rights described in section 67–1701, relating to the establishment of certain liens, as now or hereafter amended ....[1]

The "collateral" provided as security for the loans by MNB to Weben is an interest in Weben's accounts receivable. Texas law governs the contractual relationship between Weben and MNB in this case because both entities have their principal places of business in Texas, and because Weben executed and delivered the promissory notes to MNB in Dallas. Thus, TEX. BUS. & COMMERCE CODE ANN. § 9.106 (Vernon Supp.1985) governs the definition of accounts receivable here. In any event, the definition is identical under Ga.Code Ann. § 109A–9–106 (1972).

Section 9.106 provides in part that:

"Account" means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance.

When UPS deposited the contract fund in the registry of this court, UPS allocated $358,449.33 as the amount it owed to Weben under the UPS-Weben contract for construction at the Atlanta facility. Under the definition in § 9.106, this amount constitutes accounts receivable of Weben. The fact that the money is now in the registry of this court does not change its essential character. *See Sterling National Bank & Trust Company v. Southwire Company,* 713 F.2d 684, 686 (11th Cir.1983). *Compare Scott,* 143 S.E.2d at 17–18 (discussing the rights of an owner as against a contractor and subcontractor)[2] *with United States v. Durham Lumber Company,* 257 F.2d 570, 575 (4th Cir.1958), *aff'd,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960) (discussing obligations of owner under North

1. Georgia Code Annotated § 67–1701(8) (now § 44–14–320), upon which CoMaster relies in asserting its claim to the contract fund, establishes a lien "in favor of contractors, materialmen, subcontractors...."

2. The court stated that:

The money, as it becomes due, is charged with a lien as against the contractor, in favor of the subcontractor.... But if nothing becomes due to the contractor.... [t]here is no fund out of which those employed by him are to be paid. For in all these cases it must be understood that *the contractor's employes are to be paid out of the contractor's money.* The landowner is not under any primary obligation or contract to pay them (emphasis added).

Carolina lien statutes to subcontractors and contractor respectively).[3] Thus, that portion of the contract fund allocated to construction of the Atlanta facility constitutes accounts receivable of Weben in which MNB undisputedly has a perfected security interest.

It is a fundamental principle in adjudicating the right to priority of competing lien claimants that " 'the first in time is the first in right.' " *Rice Investment Company v. United States*, 625 F.2d 565, 568 (5th Cir.1980). MNB's security interest in Weben's accounts was perfected no later than April 7, 1981. CoMaster's lien, on the other hand, dates back at the earliest to July 9, 1982, the date upon which CoMaster first performed work at the Atlanta facility. Consequently, MNB's claim is prior in time to CoMaster's. Under Georgia law, therefore, MNB's perfected security interest undoubtedly takes priority over CoMaster's mechanics' lien. *Southwire Company*, 713 F.2d at 688; *Newton Ford Tractor Company, Inc. v. J.I. Case Credit Corporation*, 163 Ga.App. 497, 294 S.E.2d 723, 725 (1982); *General Electric Credit Corporation v. Capital Ford Truck Sales, Inc.*, 164 Ga.App. 468, 298 S.E.2d 159 (1982).

### Conclusion

In conclusion, MNB's motion for summary judgment is **GRANTED** and CoMaster's motion for summary judgment is **DENIED.**

SO ORDERED.

## ORDER ON MOTION FOR RECONSIDERATION

The motion for reconsideration filed by CoMaster on February 4, 1985 correctly points out that Georgia adopted the Uniform Commercial Code in 1964. Consequently, this court erred in stating, in its January 24, 1985 memorandum order, that "support [for a construction trust fund doctrine in Georgia law] finds expression only in older cases decided before enactment of the Georgia Uniform Commercial Code."

Although that statement was inaccurate as to some but not all of CoMaster's authorities, the court is not persuaded that its conclusion was affected by the error. Whatever the date of its original enactment, Georgia's version of the Uniform Commercial Code now unambiguously resolves the lien priority question presented here in favor of MNB. *See* Georgia Code Annotated § 109A–9–310; *Newton Ford Tractor Company, Inc. v. Case Credit Corporation*, 163 Ga.App. 497, 294 S.E.2d 723, 725 (1982); *General Electric Credit Corporation v. Capital Ford Truck Sales, Inc.*, 164 Ga.App. 468, 298 S.E.2d 159 (1982); *Sterling National Bank & Trust Company v. Southwire Company*, 713 F.2d 684, 686 (11th Cir.1983).

Accordingly, CoMaster's motion for reconsideration is DENIED.

SO ORDERED.

---

**3.** The court held that only that portion of the contract price remaining after payments by the owner to subcontractors was disbursable as assets of the bankrupt general contractor's estate in satisfaction of the government's tax lien.