160

In the Matter of NAMI BROTHERS, INC., Debtor.

NAMI BROTHERS, INC., Plaintiff,

v.

PAT PAVERS, INC., Defendant.

Bankruptcy No. 83–05396.
Adv. No. 85–0134TS.

United States Bankruptcy Court,
D. New Jersey.

Feb. 2, 1986.

Markowitz & Zindler, Lawrenceville, N.J., for debtor/plaintiff; by Jeffrey S. Posta, Lawrenceville, N.J.

Paglione, Massi & DeGeorge, Trenton, N.J., for defendant; by Anthony M. Massi, Trenton, N.J.

OPINION

WILLIAM H. GINDIN, Bankruptcy Judge.

This matter arises from cross-motions for summary judgment. (Bankr.R. 7056, F.R.Civ.P. 56) The plaintiff/debtor Nami Brothers, Inc., (hereinafter referred to as "Nami"), brought suit to recover a preference in the amount of $9,604.91 paid to Pat Pavers, Inc., (hereinafter referred to as "Pat Pavers"), in violation of § 547(b) of the Bankruptcy Code 11 U.S.C. § 547(b).

Nami was a general contractor for the performance of site work on a building located in Princeton, New Jersey. The general contractor was John S. McQuade of Philadelphia (hereinafter referred to as "McQuade"). Certain paving work was subcontracted by Nami to Pat Pavers. On May 9, 1983, Pat Pavers submitted a bill to Nami in the total amount of $10,672.00. Shortly thereafter, Nami submitted a bill to McQuade which included the amount claimed of $10,672.12, less a 10% holdback of $1,067.21, for a net claim of $9,604.91. Nami then added claims of its own of $3,397.00, claiming the total amount of $13,001.91 as the balance due.

On July 22, 1983, Nami received a check from McQuade in the amount of $12,009.60. No evidence was presented indicating the exact manner in which McQuade calculated the $12,009.60. On the same day that Nami received the check from McQuade, it paid Pat Pavers the sum $9,604.91. On September 19, 1983, less than 90 days thereafter, Nami filed a petition for relief under Chapter 11 of the Bankruptcy Code.

Section 547(b) of the Bankruptcy Code provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

(5) That enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Subsection (f) of § 547 provides:

For the purpose of the section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

In the instant case, all of the elements of a preference have been met. The transfer was to or for the benefit of Pat Pavers, and was for a debt which was owed at least before May 9, 1983. The debtor is presumed to have been insolvent and it was made within 90 days before the date of filing. It is conceded that Pat Pavers would receive more if allowed to retain the funds than it would have received on liquidation had the transfer not been made.

Thus, the only basis upon which the finding of a preference can be avoided is if it had been made in the ordinary course of business under § 547(c) or pursuant to some kind of trust fund theory. While the Code, § 547(c), as amended in 1984 simply makes an exception for the ordinary course of business, the Code as it read at the time of the transactions under scrutiny here required that in order to be considered in the ordinary course of business, transfer had to have taken place "not later than 45 days after such debt was incurred."

Pat Pavers relies on a theory that the monies transferred to it were in fact identifiable trust funds received by Nami from McQuade and earmarked for Pat Pavers. They rely essentially on an argument set forth in *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir.1979). Essentially, that case held that a Michigan statute specifically defining funds in the hands of a general contractor paid by "any person" to that contractor were to be considered trust funds. Mich.Comp.Laws Ann. § 570.151 (1967). Furthermore, Circuit Judge Merritt, by way of dicta, suggested "an equitable assignment or an equitable lien." 590 F.2d 642, 648. The cases relied upon by Judge Merritt, however, do not support the factual pattern in the instant case. In *Johnson v. Root Mfg. Co.*, 241 U.S. 160, 36 S.Ct. 520, 60 L.Ed. 934 (1914), Justice Holmes interpreted the *written* agreement in that particular case to be one which created an equitable lien.

The case of *American Service Co. v. Henderson*, 120 F.2d 525 (4th Cir.1941) involved the tracing of funds which had been held pursuant to an express trust and had been unlawfully distributed. In the case of *Keenan Pipe and Supply Co. v. Shields*, 241 F.2d 486 (9th Cir.1956), the court was dealing with an express intent to create a trust fund evidenced by the issuance of a check payable both to the subcontractor and a materialman. Furthermore, that case involved a public works project governed by the establishment of a trust fund for public works projects. Similarly, in *In re J.V. Gleason Co.*, 452 F.2d 1219 (8th Cir.1971), the court dealt with equitable subrogation as a claim by a surety which in fact had completed performance on contracts, paid claims, and sought to obtain the retainage specifically held back for those particular subcontractors and materialman. Circuit Judge Gibson denied an equitable lien claim while accepting the equitable subrogation reasoning.

Even in the case of *Carrier Corp. v. J.E. Schecter Corp.*, 347 F.2d 153 (2nd Cir.

1965), where the Court was dealing with New Jersey law, the basic reliance was not upon the equitable principles set forth in the opinion. The Court there, through Circuit Judge Swan, impressed the funds with a trust based upon N.J.S.A. 2A:102–11, dealing with a request by subcontractor to impress a trust. Judge Swan read into that section a civil remedy and to some extent avoided the question of whether the statute was essentially criminal in nature. The amendment of the criminal laws of the State of New Jersey has codified that section in N.J.S.A. 2C:20–9 and defines a failure to make "specified payment" as theft.

█ In the instant case, the facts are such that no finding of failure to make specified payment can be made. An examination of the figures involved leaves merely confusion. Pat Pavers urges that it is due the $9,604.91. The bill submitted was apparently for $13,001.91, and the amount received was for $12,009.61. If McQuade held back 10% of the full amount, the check which would have been remitted would have been $11,701.72. If, on the other hand, it recognized that Nami had already exercised the 10% retainage on the Pat Pavers claim and only reduced Nami's other claims by 10%, it would have remitted $12,662.21. Thus, by no mathematical formula can the amount received by Nami be made to come out to the specific amount due pursuant to the submission to McQuade of $9,604.91, plus $3397.00. In the absence of specific proofs which are apparently unavailable, there can be no tracing of the funds.

On the other hand, the purposes of the bankruptcy law as outlined in support of the Nami position must be controlling. *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) broadly defines "property" and leaves to the interpretation of the bankruptcy law itself (and by inference the Bankruptcy Code), a definition of any given transaction. In *In re Shore Air Conditioning*, 18 B.R. 643 (D.N.J.1982), Judge Stark, in this District, denied the right of a subcontractor to claim a trust fund in the hands of a contractor for the payment of materialmen. In a situation the exact reverse of the instant one, the Court held that allowance of the claim of the subcontractor would be "detrimental to other creditors and the entire distribution of the estate". 18 B.R. 643, 647. *Colliers* sets forth in detail the requirement the claimant must meet:

> When property of the estate is alleged to be held in trust, the burden rests upon the claimant to establish the original trust relationship. He must prove his title, identify the trust fund or property, and where the fund or property has been mingled with the general property of the debtor, the claimant must sufficiently trace the property. However, if it cannot first be shown that a trust has been created, there is no necessity for inquiry as to whether or not the property can be identified or traced. 4 *Collier on Bankruptcy*, 541–71 ¶ 541.13 (15th ed.)

█ Finally, the particular position of Pat Pavers was specifically rejected by Circuit Justice Tate in *Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962 (5th Cir.1983). Absent actual proof of a trust fund, same does not exist and there is no authority to impose it within the framework of the Bankruptcy Code.

Based upon the foregoing, this Court concludes that the plaintiff/debtor Nami Brothers, Inc. is entitled to summary judgment and has this day executed the order previously submitted by Nami granting summary judgment in favor of the plaintiff and against the defendant in the amount of $9,604.91.